# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA
# ALLENTOWN DIVISION

|  |  |  |
|---|---|---|
| | : | |
| CLARENCE BROWN, JR., TAWANNA BROWN, and JUWAN BROWN | : | Civil Action No. 5:23-cv-02966-ETH |
| Plaintiffs, | : | |
| | : | |
| v. | : | **Oral Argument Requested** |
| | : | |
| | : | *Electronically Filed Document* |
| DASHAWN BROOKS, MAYFLOWER LAUNDRY & LINEN, and PENSKE TRUCK LEASING CO. | : | |
| Defendants | : | |
| v. | : | |
| | : | |
| AGNA MANAGEMENT, LLC | : | |
| Third-Party Defendant | | |

## DEFENDANT PENSKE TRUCK LEASING, CO. LP's
## MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

Jeffrey L. Pettit, Esquire
Ryan J. Murphy, Esquire
Katie L. Klodowski, Esquire
**McElroy, Deutsch, Mulvaney**
**& Carpenter, LLP**
One Penn Center at Suburban Station
1617 John F. Kennedy Blvd., Suite 1500
Philadelphia, PA 19103-3515
(215) 557-2900
*Attorneys for Defendant,*
*Penske Truck Leasing Co.*

Matthew J. McColgan, Esquire
Chantez R. Degraffenreid, Esquire
**German, Gallagher**
**& Murtagh P.C.**
The Bellevue
200 S. Broad Street
Suite 500
Philadelphia, PA 19012
215-545-7700
Attorneys for Defendant,
*Penske Truck Leasing, Co.*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF QUESTIONS INVOLVED ...................................... 2

STATEMENT OF UNDISPUTED FACTS ........................................... 3

    A. Mr. Brooks's Employment with Mayflower and Staffing by AGNA ................................................................ 5

    B. Mayflower's Lease with Penske ...................................... 6

    C. Condition of 2021 Freightliner M2 106 Driven by Mr. Brooks on May 21, 2023 ................................................ 10

LEGAL STANDARD ......................................................................... 12

ARGUMENT ..................................................................................... 14

    I.    Penske Is Entitled To Summary Judgment Because Plaintiffs Have Failed To Demonstrate Any Negligence or Criminal Wrongdoing That Would Override the Broad Protections of the Graves Amendment Against Liability for Vehicle Leasing Companies Like Penske ........................................................ 14

    II.   Summary Judgment on Plaintiffs' Negligent Entrustment Claim Should Be Granted in Penske's Favor Because There Is No Evidence That Penske Knew or Should Have Known That Mr. Brooks Was Unfit or Incompetent To Operate The Vehicle ............................................................................ 18

    III.  Penske Is Entitled to Summary Judgment on Plaintiffs' Negligent Maintenance Claim Because There Is Insufficient Evidence to Establish That Penske Breached Its Duty To Maintain the Vehicle in a Reasonably Safe Condition, or That Such a Breach Caused the Alleged Injuries ............................ 21

A.     Penske Is Entitled to Summary Judgment on Plaintiffs' Negligent Maintenance Claim Because Plaintiffs Have Failed To Establish That Penske Owed Plaintiffs a Duty of Care, or that Penske Breached Any Duty of Care Owed to Plaintiffs .................................................................21

B.     Penske Is Entitled to Summary Judgment on Plaintiffs' Negligent Maintenance Claim Because Plaintiffs Have Failed To Establish That Penske's Action or Inaction Caused Plaintiffs' Injuries .............................................................24

IV.   Penske Is Entitled to Summary Judgment Because Plaintiffs Have Failed To Provide Evidence That Penske's Alleged Negligence Was a Proximate Cause of the Accident and Plaintiffs' Injuries ...............................................................26

A.     Plaintiffs' Liability and Medical Experts Fail To Opine That Penske's Alleged Maintenance of the Freightliner's Brakes Was A Proximate Cause of the Accident and Plaintiffs' Injuries ...................................................26

B.     Penske Is Entitled to Summary Judgment Because Plaintiffs Have Failed to Provide Sufficient Evidence That Penske's Alleged Negligence Was a Proximate Cause of the Accident or Plaintiffs' Injuries ................................29

V.   Penske Is Entitled to Summary Judgment on Plaintiffs' Punitive Damages Claim Because Plaintiffs Have Failed To Produce Any Evidence That Penske's Conduct Was Willful, Wanton, or Exhibited a Reckless Disregard For the Rights of Others, As Is Required For These Special Damages ............................34

VI.   The Loss of Consortium Claims Against Penske Must Be Dismissed Because They Are Derivative of the Underlying Negligence Claims, Which Fail As A Matter of Law, Thus Precluding Any Recovery For Loss of Consortium ................................38

CONCLUSION ....................................................................40

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...............................12, 13, 14

*Asbie v. Padilla*, 2024 U.S. Dist. LEXIS 117263 (E.D. Pa. July
  2, 2024) ........................................................................................30, 31

*Baez v. Delta Airlines, Inc.*, 2014 U.S. Dist. LEXIS 50789
  (S.D.N.Y. Apr. 11, 2014) .............................................................27

*Berkan v. Penske*, 535 F. Supp. 2d 341 (W.D.N.Y. 2008) ...............................15, 23

*Buzzerd v. Flagship Carwash of Port St. Lucie*, No. 3:06-0981,
  2009 U.S. Dist. LEXIS 134002 (M.D. Pa. Sep. 28, 2009) ...................16, 17

*Carton v. General Motors Acceptance Corp.*, 639 F. Supp. 2d
  982 (N.D. Iowa 2009) ...................................................................16

*Castetter v. Mr. B. Storage*, 699 A.2d 1268 (Pa. Super. 1997) .............................35

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...........................................12, 13, 14

*Christiansen v. Silfries*, 667 A.2d 396 (Pa. Super. 1995) .......................................18

*Colon v. Bernabe*, No. 07 Civ. 3369, 2007 U.S. Dist. LEXIS
  51981, 2007 WL 2068093 (S.D.N.Y. July 19, 2007) ..................................17

*Cooper v. Sniezek*, 418 F. App'x 56 (3d Cir. 2011) ...............................................14

*Daane v. Ryder Truck Rental, Inc.*, No. 18-CV-0489 (JPO),
  2022 U.S. Dist. LEXIS 23547 (S.D.N.Y. Feb. 9, 2022) ..............................16

*Dubose v. Transp. Enter. Leasing, LLC*, No. 6:08-cv-385-Orl-
  31DAB, 2009 U.S. Dist. LEXIS 5693 (M.D. Fla. Jan. 27,
  2009) ........................................................................................16

*Eckroth v. Pa. Elec., Inc.*, 12 A.3d 422 (Pa. Super. 2010) ......................................29

*Fabrizi v. Rexall Sundown, Inc.*, 2004 WL 1202984 (W.D. Pa. 2004) ......................................................................................27

*Feld v. Merriam*, 485 A.2d 742 (Pa. 1984) ........................................34

*Gordon v. Robbins*, 2024 U.S. Dist. LEXIS 156112 (M.D. Pa. Aug. 30, 2024) ..........................................................19

*Hall v. Jackson*, 788 A.2d 390 (Pa. Super. 2001) ....................................35

*Hamilton v. Brewster*, No. 2:20-CV-02054, 2021 U.S. Dist. LEXIS 175964 (W.D. Ark. Sep. 16, 2021) ................................16

*Holder v. Suarez*, No. 3:CV-14-1789, 2016 U.S. Dist. LEXIS 17388 (M.D. Pa. Feb. 12, 2016) ......................................21, 22, 23

*Hutchison v. Luddy*, 870 A.2d 766 (Pa. 2005) ..........................................35

*Kirkbride v. Lisbon Contractors, Inc.*, 521 Pa. 97, 555 A.2d 800 (Pa. 1989) .........................................................35

*Knecht v. Balanescu*, No. 4:16-CV-00549, 2017 U.S. Dist. LEXIS 169829 (M.D. Pa. Oct. 13, 2017) ...............................15, 16

*Kryeski v. Schott Glass Techs.*, 626 A.2d 595 (Pa. Super. 1993) ..........................38

*Leake v. United States*, 843 F. Supp. 2d 554 (E.D. Pa. Dec. 29, 2011) .............................................................26

*Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281 (Pa. Super. 2005) .............................................................30

*Maldonado v. City of Phila. Dep't of Human Servs.*, No. 18-1492, 2020 U.S. Dist. LEXIS 178540 (E.D. Pa. Sep. 29, 2020) ......................................................39

*Marino v. Indus. Crating Co.*, 358 F.3d 241 (3d Cir. 2004) ..................................13

*Martin v. Johns-Manville Corp.*, 494 A.2d 1088 (Pa. 1985) ...........................34, 35

*Matsushita Elec. Indus. Co v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ........................................................................................14

*Nahar v. Socci*, 112 A.D.3d 592, 976 N.Y.S.2d 200 (2d Dep't 2013) ........................................................................................27

*Nationwide Mut. Fire Ins. Co. v. Modern Gas*, 143 A.3d 412 (Pa.Super. 2016) ..................................................................29

*Roebuck v. Gateway Freight, LLC*, 1999 U.S. Dist. LEXIS 1812 (E.D. Pa. Feb. 8, 1999) ......................................................19

*Saldana v. Kmart Corp.*, 260 F.3d 228 (3d Cir. 2001) ..........................................14

*Scattaregia v. Shin Shen Wu*, 495 A.2d 552 (1985) ................................................38

*Schneider Nat'l Carriers, Inc. v. Syed,* 2019 U.S. Dist. LEXIS 6505 (M.D. Pa. Jan. 14, 2019) ....................................................20

*Seymour v. Penske Truck Leasing Co., L.P.*, No. 407CV015, 2007 U.S. Dist. LEXIS 54843 (S.D. Ga. July 30, 2007) .............................15

*SHV Coal, Inc. v. Cont'l Grain Co.*, 587 A.2d 702 (Pa. 1991) .............................35

*Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186 (3d Cir. 2001) .................................13

*Smith v. EAN Holdings, LLC*, No. 19-85, 2019 U.S. Dist. LEXIS 147189, 2019 WL 4118651 (E.D. Pa. Aug. 29, 2019) ........................................................................................39

*Soldo v. Sandoz Pharm. Corp.*, 244 F. Supp. 2d 434 (W.D. Pa 2003) ........................................................................................27

*Stone v. 866 3rd Next Generation Hotel, LLC.*, No. 99 Civ. 4780 (LTS) (KNF), 2002 U.S. Dist. LEXIS 15914, 2002 WL 1977956 (S.D.N.Y. Aug. 27, 2002) ....................................27

*Taylor v. Jackson*, 643 A.2d 771 (Pa. Super. 1994) ................................................30

*Telang v. NVR, Inc.*, Civil Action No. 19-1025, 2023 U.S. Dist. LEXIS 58084 (W.D. Pa. Mar. 30, 2023) ...................................................... 38

*Tiernan v. Devoe*, 923 F.2d 1024 (3d Cir. 1991) .............................................. 38, 39

*Valentino v.  Phila. Triathlon, LLC*, 2015 Pa. Super. LEXIS 862 (Pa. Super. 2015) ...................................................................... 35

*Velez v. Sebco Laundry Sys., Inc.*, 178 F. Supp. 2d 336 (S.D.N.Y. 2001) .................................................................. 27

*Villagran v. Freightbull, Inc.*, 698 F. Supp. 3d 807 (E.D. Pa. 2023) .................................................................... 36, 37

*Wittrien v. Burkholder*, 965 A.2d 1229 (Pa. Super. 2009) .................................... 18

## STATUTES

49 U.S.C. § 30106(a) ....................................................................... 15, 16

49 U.S.C. § 30106(d)(A) ...................................................................... 15

## TREATISES

Restatement (Second) of Torts § 308...................................................... 18

Restatement (Second) of Torts § 433...................................................... 29

## COURT RULES

Fed. R. Civ. P. 56(a) ...................................................................... 34, 38

Fed. R. Civ. P. 56(c) ......................................................................... 12

## PRELIMINARY STATEMENT

The Court should grant summary judgment in favor of Defendant Penske Truck Leasing Co., L.P. ("Penske") because Plaintiffs' claims are precluded by the Graves Amendment. The undisputed issues of material facts in this case fail to support their claims against Penske for negligent entrustment or negligent maintenance.

Plaintiffs allege that Defendant Dashawn Brooks operated the subject Penske truck under Mayflower's operating authority without proper licensure in a dangerous manner and with defective brakes. Plaintiffs obtained testimony that Mr. Brooks, indeed, was without proper licensure. However, this is where the Plaintiffs' case against Penske ends. Plaintiffs deduced zero evidence that Mr. Brooks was an agent or employee of Penske. Plaintiffs failed to show that Penske was aware or should have been aware of, specifically, Mr. Brooks' licensure; or that it had any opportunity or duty to evaluate Mr. Brooks' qualifications. Moreover, Plaintiffs have failed to support the claim that Penske was aware or should have been aware of the purported brake deficiency. And, fatal to Plaintiffs' case against Penske, that any alleged brake defect was the legal cause of this accident.

Faced with the adverse case law in this District and the Middle and Western Districts, Plaintiffs seek to create duties for truck leasing companies that do not exist under Pennsylvania or federal law. Furthermore, the evidence is clear that Penske's

alleged negligent acts were not a proximate cause of the accident or Plaintiffs' injuries.

For the reasons set forth herein, this Honorable Court should grant Penske's Motion and enter judgment in favor of Penske.

## STATEMENT OF QUESTIONS INVOLVED

I.    Are Plaintiffs' claims against Penske barred as a matter of law under the Graves Amendment which precludes liability of vehicle leasing companies like Penske absent a showing of negligence or criminal wrongdoing?

**Suggested Answer:** Yes.

II.   Should Plaintiffs' claim of Negligent Entrustment be dismissed when Plaintiffs failed to present sufficient evidence that Penske knew or should have known that an individual driver hired by its customer from a third-party company was allegedly incompetent or unfit to operate a vehicle?

**Suggested Answer:** Yes.

III.  Should Plaintiffs' claim of Negligent Maintenance be dismissed when Plaintiffs failed to present sufficient evidence that Penske breached its duty to maintain the truck in a reasonably safe condition when it was thoroughly inspected by Penske less than three months before the accident and no Mayflower driver reported issues to Penske?

**Suggested Answer:** Yes.

2

IV.    Should Plaintiffs' claims be dismissed when Plaintiffs failed to present sufficient evidence and expert testimony to establish that the one allegedly defective brake was a factual cause of the accident or increased the severity of the Plaintiffs' injuries?

**Suggested Answer:** Yes.

V.    Should Plaintiffs' claim for Punitive Damages against Penske be dismissed when Plaintiffs failed to present sufficient evidence that Penske's conduct was willful, wanton, or showed a reckless disregard for the rights of others sufficient to support a claim for punitive damages?

**Suggested Answer:** Yes.

VI.    Must Plaintiffs' Loss of Consortium claims be dismissed as derivative of the underlying Negligence claims against Penske which fail as a matter of law?

**Suggested Answer:** Yes.

## <u>STATEMENT OF UNDISPUTED FACTS</u>

Plaintiffs' claims arise from a May 21, 2023, multi-vehicle accident on northbound Interstate 95 (I-95) near milepost 20.1 in Philadelphia County, Pennsylvania, caused by Defendant, Dashawn Brooks ("Mr. Brooks"), an employee or agent of Defendant Mayflower Laundry & Linen ("Mayflower"), who was operating a 2021 Freightliner M2 106 box truck owned by Defendant Penske Truck Leasing Co., L.P. ("Penske") and leased to Mayflower.

Mr. Brooks' route that day began in New Castle, Delaware, approximately forty miles from where this accident occurred. <u>See</u> Exhibit A at 84:7–12. There is no evidence that the brakes of the Penske truck, or any other piece of equipment thereon, experienced or exhibited any functionality issues prior to this accident. <u>Id</u>. In fact, the record is clear that the truck demonstrated zero inability to sufficiently slow or brake prior to this accident <u>Id</u>. <u>See also</u> Exhibits C and E.

Moments before this accident, according to Mr. Brooks, he was driving in the second lane from the left when he moved into the far-left lane behind Plaintiffs' 2008 Lexus. <u>See</u> Exhibit A at 88:22–89:5. Plaintiffs' car slammed on its brakes and Brooks' truck struck the rear of Plaintiffs' vehicle causing injuries to the driver, Juwan Brown, and his mother and father, Tawanna Brown and Clarence Brown. <u>Id</u>. at 89:6–10.

Critically, both Plaintiffs' and Penske's retained liability experts concur with the speed at which Mr. Brooks was driving just before impact. Plaintiffs retained Paul Dillard as a fleet safety expert to determine whether any unsafe practices contributed to the crash. <u>See</u> Exhibit G. Mr. Dillard opined that Mr. Brooks failed to apply the defensive driving principles of alertness, foresight, and good judgment required to prevent the collision. <u>See</u> Exhibit G at 4. He further opined that Mayflower failed to properly train Mr. Brooks or verify that he was sufficiently qualified for his position as a driver. <u>See</u> Exhibit G at 5–6.

Mr. Dillard did not suggest that Penske should be involved in the selection or training of Mayflower's drivers. On the contrary, Mr. Dillard highlighted the fact that Mayflower's Lease with Penske required its leased vehicle to be operated by a qualified and licensed driver, and that Mayflower had failed in that regard. See Exhibit G at 6.

Importantly, Mr. King also determined that the accident was ultimately caused by the fact that Mr. Brooks was traveling between twenty-five and forty-four miles per hours when the first collision occurred, and that Mr. Brooks failed to make a timely brake application. See Exhibit J at 4.

## A. Mr. Brooks's Employment with Mayflower and Staffing by AGNA

Defendant AGNA Management, LLC ("AGNA") provided Mr. Brooks to Defendant Mayflower. Mayflower hired Mr. Brooks around June or July 2022. See Exhibit A at 13:13–21. See Exhibit B at 29:20–22. See also Exhibit C

Mayflower assigned Mr. Brooks to the position of laundry maintenance/laundry separator. See Exhibit A at 16:21–18:3. About six to seven months later, Mayflower offered Mr. Brooks a new position as a driver. See Exhibit A at 19: 11–17; 20:20–24. Mr. Brooks did not present Mayflower with a valid driver's license; rather, he gave Mayflower an identification card. See Exhibit B at 43:20–44:24. Mayflower gave Mr. Brooks limited instruction on the vehicle and had him ride with another driver for a period of time to observe. See Exhibit A at 26:7–

9; 27:4–12. After that, Mayflower permitted Mr. Brooks to drive the freightliner to pick up and deliver laundry to Mayflower's customers.

Mayflower claims that it relied on AGNA to make sure that Mr. Brooks was a safe driver. <u>See</u> Exhibit B at 50:24–51:4. Mayflower did not provide any information to Penske about Mr. Brooks's qualifications as a driver. <u>See</u> Exhibit D at 75:11–14. By Mayflower's own admission, Penske had no real involvement in Mayflower's business. <u>See</u> Exhibit D at 75:11–14.

### B. Mayflower's Lease with Penske

Pursuant to a May 21, 2018, Lease Agreement between Penske and Mayflower (the "Lease"), Mayflower leased the 2021 Freightliner M2 box truck that Mr. Brooks was operating on May 21, 2023. <u>See</u> Exhibit D at 60:11–63:21. The Lease contained a number of provisions relevant to this Motion.

First, section "B" of the Lease, titled "Selection" states as follows, in part:

> [Mayflower] has selected each Vehicle . . . and has requested that Penske purchase each Vehicle for lease to [Mayflower] under this VLSA. [Mayflower] is making its own determination as to the suitability and functionality of the Vehicle(s) and is not relying on any actions or statements by Penske other than as set forth herein.

<u>See</u> Exhibit E at 2.

Section Three of the Lease, titled "Customer Obligations," reads, in part: "[Mayflower] will cause its drivers to (a) promptly report any trouble concerning a Vehicle on forms provided by Penske and (b) check oil and coolant levels in each

Vehicle on a daily basis." <u>See</u> Exhibit E at 2. Section Eight of the Lease, titled

"Vehicle Use and Drivers," provides, in part:

> From the time a Vehicle is made available to [Mayflower]
> until its return to Penske upon termination or expiration of
> its lease, [Mayflower] shall have exclusive possession,
> control, and use of such Vehicle . . . . Vehicles shall be
> operated by safe, qualified, properly licensed drivers, who
> shall conclusively be presumed to be [Mayflower's]
> agents, servants or employees only, and subject to
> [Mayflower's] exclusive direction and control. Vehicles
> shall not be operated: (a) by a driver in possession of or
> under the influence of alcohol or any controlled drug,
> substance or narcotic; (b) in a reckless, abusive or
> negligent manner; (c) off an improved road; (d) on an
> underinflated tire; (e) with insufficient or inadequate
> coolant, oil or fluids; (f) while improperly loaded or
> loaded beyond maximum weight . . . (g) in violation of any
> applicable laws, ordinances, or rules; or (h) outside the
> United States or Canada (collectively "Misuse").

<u>See</u> Exhibit E at 3.

By Mayflower's own admission, it did not abide by the terms of its Lease

contract with Penske. <u>See</u> Exhibit D at 63:22–64:13.

Penske's obligations were as follows:

> Penske shall, at its expense and subject to Article 8,
> provide with respect to the Vehicles: (a) all preventive
> maintenance, replacement parts and repairs to keep the
> Vehicles in good repair and operating condition; (b) oil
> and lubricants necessary for the efficient operation of the
> Vehicles; (c) all necessary tires as a result of normal wear
> and tear and not as a result of any impact, curbing or
> puncture damage or other accident, incident or Misuse; (d)
> road service because of mechanical and tire failures not
> attributable to Misuse or other violation of this VLSA; (e)

> periodic exterior washing, and (f) initial painting and lettering of each Vehicle at a cost not exceeding the per-vehicle allowance specified on its Schedule "A". In the event a Vehicle shall be disabled for any reason, [Mayflower] and/or its driver shall immediately notify Penske. If a Vehicle is disabled because of mechanical or tire failure, Penske shall, within a reasonable period of time after receipt of notification, properly repair, or cause the repair of, the Vehicle. Penske shall have no responsibility for any repair or service to a Vehicle away from its facilities unless authorized by Penske and documented by an itemized bill for such repairs or services.

See Exhibit E at 2.

Penske scheduled regular annual preventative maintenance for every unit in Mayflower's fleet.  See Exhibit D at 26:12–27:2. Penske required Mayflower to return its vehicles to Penske for inspection every four months or every 22,500 miles, whichever came first. See Exhibit H at 6:10–20. Penske enforced this policy to make sure that the vehicles it leased to Mayflower were safe for the road. See Exhibit H at 7:10–14.

Penske provided Mayflower reminders and results of vehicle inspections via a customer-facing app called "Fleet Insight," including pictures of damage and repair orders. See Exhibit H at 14:10-21, 18–21. Mayflower had the ability to report the mileage on each vehicle using Fleet Insight in order for both Mayflower and Penske to determine when vehicles needed inspected in accordance with Penske's schedule. See Exhibit H at 14:18–15:4.

Penske also had several measures in place to ensure that Mayflower timely brought its trucks leased from Penske in for preventative maintenance. <u>See</u> Exhibit H at 30:15–22. Penske utilized a corporate scheduling team that called customers like Mayflower, sent them emails, and follow-ups when they are nearing a maintenance deadline. <u>See</u> Exhibit H at 30:23–25. <u>See</u> Exhibit H at 31:8–12. The Lease also serves as a contractual agreement requiring Mayflower, which had possession of the vehicle, to bring the vehicle to Penske on time for preventative maintenance. <u>See</u> Exhibit H at 30:23–31:1.

If there was an issue with a Penske vehicle leased to Mayflower, the Lease obligated Mayflower to inform Penske of the issue and take the vehicle to a Penske facility for maintenance. <u>See</u> Exhibit B at 93:15–94:2; 105:18–106:1. Mayflower instructed its drivers or managers to fill out a form called a "driver's manifest," or a "Driver Vehicle Inspection Report." <u>See</u> Exhibit B at 61:6–62:6; Exhibit D at 48:17–49:4; Exhibit F at 48:15–49:23. Penske would then require that Mayflower take that truck out of service pending repairs. <u>See</u> Exhibit B at 61:6–62:6; Exhibit D at 48:17–49:4; Exhibit F at 48:15–49:23.

Mayflower ***did not*** rely on Penske for day-to-day maintenance or inspections or to identify maintenance problems with its trucks. <u>See</u> Exhibit D at 27:16–21. Nor

does any law require Penske to conduct the same.[1] Rather, Mayflower instituted a standard operating procedure requiring its drivers, such as Mr. Brooks, to perform pre-trip and post-trip inspections to ensure that every part of the Penske truck is operational and functional. <u>See</u> Exhibit D at 27:16–28:5. This included an inspection of "the lights, the brakes, the lift gate and the air brake . . . ." <u>See</u> Exhibit D at 48:1–3. The transportation managers at Mayflower trained drivers like Mr. Brooks annually on these procedures. <u>See</u> Exhibit D at 28:17–29:2. It appears this process may be in alignment with the federal regulations in 49 CFR 396.

### C. Condition of 2021 Freightliner M2 106 Driven by Mr. Brooks on May 21, 2023

Mayflower had received the Freightliner driven by Mr. Brooks in good condition and proper operating order. <u>See</u> Exhibit D at 67:12–68:22. <u>See</u> Exhibit B at 69:10–14; Exhibit D at 70:18–71:3. Penske performed the required annual maintenance of the Freightliner on February 28, 2023. <u>See</u> Exhibit H at 8:3–7. Penske's brake inspector measured the brake strokes to be 1.34 in/mm for the front axles, and 1.38 in/mm for the rear axles. <u>See</u> Exhibit H at 29:12–14. Those measurements were within the Department of Transportation's maximum

---

[1] 49 C.F.R. 396.11 imposes upon a motor carrier the requirement that it ensure its drivers perform daily inspections. Here, Penske is neither the motor carrier nor an intermodal equipment provider. Rather, Mayflower is the applicable motor carrier. See Exhibit K.

adjustment limits of 2.5 in/mm for a 30L long stroke brake chamber. See Exhibit H at 8:11–12:11.

Under Mayflower's own procedures, Mr. Brooks was required to inspect the air brakes on the Freightliner that he drove on May 21, 2023, and should have informed Penske of any issues with the brakes by way of a Driver Vehicle Inspection Report. See Exhibit F at 49:24–50:8.

Plaintiffs assert only one issue with Penske's Freightliner on the day of the accident. Plaintiffs retained R. Scott King, BSME, CFEI, to evaluate Penske's Freightliner involved in the accident. See Exhibit J. Based on his August 15, 2023, inspection of the Freightliner, Mr. King determined that the right rear brake chamber exhibited a three-inch stroke, which exceeded the allowable limit of two-and-a-half inches. See Exhibit J at 2. Accordingly, Mr. King opined that the Freightliner was not roadworthy at the time of the incident. See Exhibit J at 4. [2] Notably, Mr. King does not reference either the USDOT or FMCSA regulations in his report.

---

[2] Plaintiffs also retained Justin P. Schorr, Ph.D., to provide an engineering analysis regarding the causes of the collision. See Exhibit I. Dr. Schorr opined that Mr. Brooks was likely driving at a rate of approximately forty-four miles per hour when he struck the rear of the Lexus and that he did not slow his vehicle in any substantive way before the collision. See Exhibit I at 4. He also noted that Mr. Brooks did not have a valid driver's license and was not provided any sort of training related to the operation of the freightliner. See Exhibit I at 4. He further opined that the freightliner was not roadworthy at the time of the accident, because all four brakes were not operational. See Exhibit I at 4. In support of that assertion, Dr. Schorr relied entirely on the expert report of R. Scott King, BSME, CFEI. See Exhibit J.

Penske's expert determined that the right rear brake was *not* out of adjustment, just as Penske had determined on February 28, 2023.[3]  For purposes of this Motion, Penske submits that if the finder of act agrees with Plaintiffs' expert's measurement, its Motion for Summary Judgment should be granted nevertheless.

## LEGAL STANDARD

A motion for summary judgment is governed by Fed. R. Civ. P. 56(c), which provides that summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Summary judgment is only appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[3] Penske's expert John Struble found all four of Penske's truck brakes to be within adjustment. Penske's expert Brian McGuire comments upon Mr. King's three-inch measurement stating: "The right rear brake adjustment was measured at 3 inches, which is the maximum allowable according to the Manufacturer's Rating." It follows that even at the disputed three-inch measurement, that measurement was within the Manufacturer's Rating. See Exhibit K.

242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *Id.*

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citing *Anderson*, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); *see Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing" — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Cooper v. Sniezek*, 418 F. App'x 56, 58 (3d Cir. 2011) (citing *Celotex*, 477 U.S. at 322).

Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 257. Indeed, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## ARGUMENT

**I.    Penske Is Entitled To Summary Judgment Because Plaintiffs Have Failed To Demonstrate Any Negligence or Criminal Wrongdoing That Would Override the Broad Protections of the Graves Amendment Against Liability for Vehicle Leasing Companies Like Penske.**

Plaintiffs contend that Penske (1) negligently entrusted its truck to Mayflower, which then employed a driver, Mr. Brooks, who did not possess a driver's license,

14

CDL or otherwise; and (2) negligently maintained its truck, which was in Mayflower's possession, because one of four brakes was allegedly out of adjustment.

However, the Graves Amendment provides that a company in the business of leasing or renting motor vehicles "shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease," unless the company is negligent or engaged in criminal conduct. 49 U.S.C. § 30106(a).

The Graves Amendment defines "owner," as used in the statute, as a "record or beneficial owner, holder of title, lessor, or lessee of a motor vehicle." 49 U.S.C. § 30106(d)(A). There is no dispute that Penske was the owner and lessor of the Freightliner driven by Mr. Brooks.

The Graves Amendment preempts and bars claims under state law that seek to impose vicarious liability on rental companies, such as Penske, for the acts or omissions of rental customers. *See*, *e.g.*, *Knecht v. Balanescu*, No. 4:16-CV-00549, 2017 U.S. Dist. LEXIS 169829, at *27 (M.D. Pa. Oct. 13, 2017); *Berkan v. Penske*, 535 F. Supp. 2d 341, 345 (W.D.N.Y. 2008); *Seymour v. Penske Truck Leasing Co., L.P.*, No. 407CV015, 2007 U.S. Dist. LEXIS 54843 (S.D. Ga. July 30, 2007);

*Hamilton v. Brewster*, No. 2:20-CV-02054, 2021 U.S. Dist. LEXIS 175964 (W.D. Ark. Sep. 16, 2021).

The Graves Amendment contains a narrow "savings clause" that allows for potential liability only in the case of negligence or criminal wrongdoing by the owner. 49 U.S.C. § 30106(a). Courts have recognized that the savings clause "is rarely applicable and should be cautiously applied in light of Congress' clear intent to forestall suits against vehicle leasing companies." *Daane v. Ryder Truck Rental, Inc.*, No. 18-CV-0489 (JPO), 2022 U.S. Dist. LEXIS 23547 (S.D.N.Y. Feb. 9, 2022); *Dubose v. Transp. Enter. Leasing, LLC*, No. 6:08-cv-385-Orl-31DAB, 2009 U.S. Dist. LEXIS 5693 (M.D. Fla. Jan. 27, 2009); *see also Buzzerd v. Flagship Carwash of Port St. Lucie*, No. 3:06-0981, 2009 U.S. Dist. LEXIS 134002 (M.D. Pa. Sep. 28, 2009).

Stated differently, while a rental company cannot be subject to liability for the acts of rental drivers, it can face liability for its own negligence *only* where a duty exists under state law. *See Knecht*, 2017 U.S. Dist. LEXIS 169829, at *27 (M.D. Pa. Oct. 13, 2017) (finding no exception to the Graves Amendment because the motor vehicle rental company "did not have an affirmative duty to independently investigate driver backgrounds prior or subsequently to entering into the lease agreement." *Carton v. General Motors Acceptance Corp.*, 639 F. Supp. 2d 982 (N.D. Iowa 2009); *Buzzerd,* No. 3:06-0981, 2009 U.S. Dist. LEXIS 134002 at *7 (M.D.

Pa. Sep. 28, 2009).[4] *See*, *e.g.*, *Colon v. Bernabe*, No. 07 Civ. 3369, 2007 U.S. Dist.

LEXIS 51981, 2007 WL 2068093, at *4 (S.D.N.Y. July 19, 2007).[5]

Presumably, Plaintiffs contend that their claims fall within the savings clause

of Graves because they assert that Penske's negligence resulted in the hiring of Mr.

Brooks and the out-of-adjustment brake.

---

[4] Critical to *Buzzerd* was the Middle District of Pennsylvania's finding:

> "[p]laintiffs contend that their claims fall within the saving clause in [the Graves Amendment] in that they have asserted negligence on the part of U-Haul Arizona…[a]ssuming, however, that Pennsylvania law would impose such a nondelegable duty, *the Graves Amendment operates to preempt such law because the nondelegable duty doctrine is simply another way of imposing vicarious liability." Id. (emphasis added).*

The court also plainly and importantly concluded:

> "The Graves Amendment preempts state law to the extent that liability would be imposed on lessors of vehicles *solely as a consequence of their ownership interest in the vehicles. Id. (emphasis added).*

[5] Footnote four of the *Colon* opinion provides: "The statutory language is quite clear. The legislative history also makes clear that § 30106 means what it says, *i.e.*, that the owner-lessor remains liable if at fault, such as for negligent maintenance. *E.g.*, 151 Cong Rec. H1034-01, 2005 WL 556038 (Cong. Rec. 2005) at *H1200 (Rep. Graves, sponsor of the provision: "I want to emphasize, I want to be very clear about this, that this provision will not allow car and truck renting and leasing companies to escape liability if they are at fault."); *id.* at *H1200 (Rep. Blunt: "The . . . amendment will establish a fair national standard for liability: A rental or leasing company will only be liable in instances where the company is negligent or at fault."); *id.* at *H1202 (Rep. Smith: "The Graves-Boucher amendment would create a national standard, providing that vehicle rental companies can only be held liable in situations where they have actually been negligent. This amendment in no way lets companies off the hook when they have been negligent."); *id.* at *H1202 (Rep. Graves: "This proposal would not exempt rental and leasing companies from the liability involved with their equipment. They are still liable and should be liable for negligence when it deals with their equipment, but they should not be [vicariously] liable for the actions of drivers."). *Colon v. Bernabe*, 2007 U.S. Dist. LEXIS 51981, *12-13.

As will be demonstrated herein, the undisputed facts reveal that Penske did not negligently entrust its Freightliner truck to Mr. Brooks, nor negligently maintain the truck.  Furthermore, neither error nor omission on the part of Penske caused this accident.

**II.    Summary Judgment on Plaintiffs' Negligent Entrustment Claim Should Be Granted In Penske's Favor Because There Is No Evidence That Penske Knew or Should Have Known That Mr. Brooks Was Unfit or Incompetent To Operate The Vehicle.**

With respect to negligent entrustment claims, Pennsylvania has adopted Section 308 of the Restatement (Second) of Torts:

> [i]t is negligent to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should have known that such person intends or is likely to use the thing or conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

*Christiansen v. Silfries*, 667 A.2d 396 (Pa. Super. 1995) (*citing* Restatement (Second) of Torts § 308). Comment b to Section 308 of the Restatement (Second) of Torts states, in relevant part, that the rule applies:

> [W]here the actor entrusts a thing to a third person . . . if the actor knows that the third person intends to misuse it, or if the third person's known character or the peculiar circumstances of the case are such as to give the actor good reason to believe that the third person may misuse it.

Restatement (Second) of Torts § 308, comment b; *Wittrien v. Burkholder*, 965 A.2d 1229, 1232 (Pa. Super. 2009).

18

The disposition of Plaintiffs' negligent entrustment claim against Penske under Pennsylvania law begins and ends with the controlling and outcome determinative guidance from *Roebuck v. Gateway Freight, LLC*, 1999 U.S. Dist. LEXIS 1812, *1(E.D. Pa. Feb. 8, 1999). In *Roebuck*, plaintiff's claims arose from a multi-vehicle accident where a truck that was owned by Penske, leased to defendant Gateway Freight, LLC, and driven by Gateway's employee, crossed the median of the road and struck oncoming vehicles. The court granted Penske's motion for summary judgment because Gateway had exclusive possession, control, and use of the vehicle until its return, under the terms of the lease contract, and Penske had no control over the employment of the driver.[6]

*Roebuck* was cited in a published Opinion in the Middle District of Pennsylvania just one month ago and features similar facts and claims to those brought against Penske by Plaintiffs in this case. *See Gordon v. Robbins*, 2024 U.S. Dist. LEXIS 156112, *11 (M.D. Pa. Aug. 30, 2024) (relying on *Roebuck* among other authorities to dismiss a negligent entrustment claim against a leasing company where the lessee permitted an intoxicated employee to operate the leased vehicle).

---

[6] The Court concluded: "We find that there are no grounds on which to find that Penske negligently entrusted its vehicle to Mr. Hilton. The lease itself states that: 'CUSTOMER agrees that all vehicles shall be operated by safe, qualified, properly licensed drivers, who shall conclusively be presumed to be CUSTOMER's agent, servant or employee only, and subject to its exclusive direction and control.' Lease Agreement at P 7. Such language certainly indicates that Mr. Hilton was not only Gateway's employee, but that Penske had no responsibility with regards to the credentials of Gateway's drivers." *Roebuck*, *19-20.

19

*See also Schneider Nat'l Carriers, Inc. v. Syed,* 2019 U.S. Dist. LEXIS 6505 (M.D. Pa. Jan. 14, 2019).

Plaintiffs' claim of negligent entrustment must fail for the same reasons. Penske had no role in selecting or supervising Mayflower's driver, Mr. Brooks. The evidence does not support any assertion that Penske knew or had reason to know that Mr. Brooks was unfit or incompetent to operate the vehicle.

Moreover, the responsibility for Mr. Brooks' hiring and fitness to drive lies solely with his employer Mayflower. Not only is this implied in the lessor-lessee relationship, but it is also contractually agreed to and explicitly set forth in the Penske-Mayflower Lease. See Exhibit E[7]

Accordingly, summary judgment should be entered in favor of Penske and against Plaintiffs.

---

[7] Another reason that Penske cannot be liable for negligent entrustment here is because a third party, Defendant Agna, not party to the Penske-Mayflower lease, was supplying workers to Mayflower to drive the Penske trucks at the time of this accident unbeknownst to Penske. See Exhibits C and E. This fact only serves to further attenuate Penske's relationship and involvement with this accident, especially where Penske had no knowledge of Agna's involvement, and such use contravened the terms of the Penske-Mayflower Lease. See Exhibit E at paragraph 8.

**III.    Penske Is Entitled to Summary Judgment on Plaintiffs' Negligent Maintenance Claim Because There Is Insufficient Evidence to Establish That Penske Breached Its Duty To Maintain the Vehicle in a Reasonably Safe Condition, or That Such a Breach Caused the Alleged Injuries**

Plaintiff's negligent entrustment claim must fail because (1) Plaintiffs have failed to establish duty and breach of duty; and (2) Plaintiffs have failed to prove that Penske's action or inaction caused Plaintiffs' injuries.

**A.    Penske Is Entitled to Summary Judgment on Plaintiffs' Negligent Maintenance Claim Because Plaintiffs Have Failed To Establish That Penske Owed Plaintiffs a Duty of Care, or that Penske Breached Any Duty of Care Owed to Plaintiffs**

In their claims against Penske, Plaintiffs allege that Penske failed to inspect, repair, and maintain the subject "vehicle." ECF Complaint No. 53 ¶¶ 92, 100, and 108. The only alleged result of Penske's supposed failure is that the brake stroke of one brake out of four was out of compliance almost two months after the accident. It had been checked less than two months before the accident during a Penske preventative maintenance inspection and was in compliance at that time.

There is a bevy of Federal Court case law which holds that the mere allegation of a mechanical defect, like a brake issue, is not sufficient to defeat summary judgment. In *Holder v. Suarez*, the Middle District granted a defendant's motion for summary judgment where, even acknowledging that the defendant lessor had a duty to maintain a truck, nothing in the record demonstrated the lessor breached its duty in negligence. No. 3:CV-14-1789, 2016 U.S. Dist. LEXIS 17388 (M.D. Pa. Feb. 12,

2016). In *Holder*, an employee was driving a vehicle leased from Trac Intermodal to his employer, Evans Delivery Company, Inc. *Id.* at *4. Trac Intermodal and the employer had entered into a lease agreement where Trac was required to perform the inspections, maintenance, and repairs of the vehicle, and the employer was tasked with selecting drivers and third party vendors. *Id.* at *6. Trac argued that Plaintiffs' claims were barred by the Graves Amendment, or, in the alternative, that "there [was] simply no evidence to show that this particular [truck] was negligently maintained and/or that it was not 'roadable' when it left the terminal under the exclusive control of Evans Transportation." *Id.* at *42.

The district court granted summary judgment in Trac's favor, and reasoned that although Trac had an obligation to maintain the vehicle, *"the more important question is whether or not there is any evidence that demonstrates a breach of that duty that led to the accident" and the subsequent injuries to plaintiffs. Id.* at 50. (emphasis added).

In *Holder*, Plaintiffs engaged two experts who opined that at an inspection following the accident, the truck was found to have electrical deficiencies and insufficient conspicuity tape. *Id.* Plaintiffs' experts suggested that because the truck was in "out of service" condition at the time of the accident, Trac, by implication, breached its duty. *Id.* The court disagreed and reasoned that there was no evidence that Trac was notified of a defect with the vehicle prior to the accident that would

trigger such a duty. *Id.* at 53. Accordingly, absent duty and breach, Trac was entitled to summary judgment. *Id.*

In the same way, in *Berkan*, 535 F. Supp. 2d at 345, the driver of a tractor-trailer leased by his employer from Penske struck the plaintiffs' vehicle from the rear while it was stopped. *Id.* The driver in *Berkan* alleged that "the brakes did not respond adequately to his attempts to stop the vehicle prior to the collision." Id. In addition, there was evidence that the trailer was grossly overloaded. *Id.*

The court granted Penske's motion for summary judgment because the plaintiffs were barred by the Graves Amendment. *Id.* Equally critical to that holding, however, was the court's determination that "no evidence has been adduced that Penske, which owned the tractor, engaged in any negligence or criminal wrongdoing, particularly with respect to the tractor's maintenance and inspection." *Id.* The court determined that the mere allegation of a brake issue and a grossly overloaded truck was insufficient to hold Penske liable. *Id.*

Like *Holder and Berkan*, there is no evidence here suggesting that Penske was notified of a deficiency with the truck prior to the accident that would impose a duty on it to schedule the truck for maintenance, and there is no evidence suggesting that Penske failed to maintain the truck in a reasonably safe condition. Plaintiffs have provided no evidence that the alleged out-of-adjustment rear brake was caused by improper maintenance by Penske. Even more tellingly perhaps, no expert opinion

has been produced which criticizes Penske's maintenance or repair practices, or which suggests Penske breached any duty owed to Plaintiffs.

Penske regularly inspected the brakes, having last performed a brake inspection on February 28, 2023. In the interim, by the terms of the Lease, Mayflower was responsible for such inspection and was to report any noted issue to Penske. Indeed, following the February 18, 2023 inspection, Mayflower did not report any such issues of any variety including the brakes to Penske.

Just like in *Holder* and *Berkan*, all accounts indicate that the truck was in proper working order before the accident. Also like in *Holder*, Plaintiffs' expert is alleging a deficiency with the truck based solely on one measurement taken months *after* the crash. Penske addressed all such reports by Mayflower, but none were ever made about the brakes. Thus, Plaintiffs have failed to proffer any evidence at all that Penske allegedly breached any duty owed to Plaintiffs, nor that any purported breach caused Plaintiffs' damages.

**B.    Penske Is Entitled to Summary Judgment on Plaintiffs' Negligent Maintenance Claim Because Plaintiffs Have Failed To Establish That Penske's Action or Inaction Caused Plaintiffs' Injuries**

Penske is entitled to summary judgment on Plaintiffs' negligent maintenance claim because Plaintiffs have failed to adduce evidence demonstrating that the right rear brake stroke adjustment caused the accident. Plaintiffs cannot rely solely on its expert's disputed opinion that the right rear brake stroke was out of adjustment to

prove its assertion that Penske negligently maintained the Freightliner leased to Mayflower. The case law cited above also requires Plaintiffs to prove that the condition of the brake caused the accident and the resulting injuries to Plaintiffs. An analysis of the reports of Plaintiffs' two liability experts reveals that they are unable to provide such opinions.

Plaintiffs' expert, R. Scott King, BSME, CFEI, inspected the Freighliner on August 15, 2023 and found that the right rear brake chamber exhibited a three-inch stroke that exceeded the commercial vehicle safety alliance standard of two and one-half inches. He attributed that to the failure of the automatic brake adjustment on the truck. He also concluded that the Penske Freightliner was travelling between 25 and 44 mph at the point of collision and Mr. Brooks "failed to make a timely brake application."

Plaintiffs' other liability expert, Justin P. Schorr, Ph.D., relied on Mr. King's analysis and other materials to opine that the Freightliner was travelling at 44 mph when it struck Plaintiffs' vehicle and that Mr. Brooks did not slow the Freightliner "in any substantive way prior to impact." The only opinion that Dr. Schorr provides about the role of the allegedly "defective brake" is that it increased the kinetic energy at the point of impact by twenty percent (20%).

Absent from either report is any opinion that the excess stroke on one of the brakes caused the accident or contributed to Mr. Brooks' failure to timely apply the

brakes. The alleged effect of the "defective brake" was to increase the Freightliner's kinetic energy, but not its stopping power. Consequently, Plaintiffs have failed to prove that Penske's alleged negligent maintenance of the truck caused the collision. Summary judgment on Plaintiffs' negligent maintenance claim should be granted in Penske's favor.

## IV. Penske Is Entitled to Summary Judgment Because Plaintiffs Have Failed To Provide Evidence That Penske's Alleged Negligence Was a Proximate Cause of the Accident and Plaintiffs' Injuries

Plaintiffs' evidence, including expert opinion, fails to prove that any error or omission by Penske, including the one alleged out-of-adjustment brake, was a proximate cause of the accident and Plaintiffs' injuries. Penske is entitled to summary judgment.

### A. Plaintiffs' Liability and Medical Experts Fail To Opine That Penske's Alleged Maintenance of the Freightliner's Brakes Was A Proximate Cause of the Accident and Plaintiffs' Injuries

To prevail on their claim, Plaintiffs must prove that Penske's alleged negligent maintenance of the Freightliner was the cause of the injuries alleged. Plaintiffs must meet that burden through admissible expert testimony, where, as here, the determination of causation is beyond the knowledge or expertise of an ordinary lay person. *See*, *e.g.*, *Leake v. United States*, 843 F. Supp. 2d 554 (E.D. Pa. Dec. 29, 2011); *Fabrizi v. Rexall Sundown, Inc.*, 2004 WL 1202984, at *12 (W.D. Pa. 2004) ("Where a plaintiff fails to present admissible evidence regarding causation, courts

routinely have granted summary judgment in favor of the defendant."); *Soldo v. Sandoz Pharm. Corp.*, 244 F. Supp. 2d 434, 576-77 (W.D. Pa 2003) (granting summary judgment under Pennsylvania law for defendant because, "[i]n the absence of expert testimony, [the] plaintiff has failed to demonstrate that [the defendant's product] can and did cause her [injury]"); *Velez v. Sebco Laundry Sys., Inc.*, 178 F. Supp. 2d 336, 341 (S.D.N.Y. 2001) (rejecting negligent maintenance claim where plaintiff did not "offer any evidence to support her assertions," such as "expert testimony or other evidence demonstrating that a reasonably prudent technician would have found the defect during a regularly scheduled inspection.").

In *Baez v. Delta Airlines, Inc.*, 2014 U.S. Dist. LEXIS 50789, \*26–28 (S.D.N.Y. Apr. 11, 2014), the court opined:

> Plaintiff bears the burden of putting forth at least some evidence regarding the cause of the unintended acceleration, and whether it was and should have been discovered or repaired in a normal mechanical inspection. *See Stone v. 866 3rd Next Generation Hotel, LLC.*, No. 99 Civ. 4780 (LTS) (KNF), 2002 U.S. Dist. LEXIS 15914, 2002 WL 1977956, at \*5 (S.D.N.Y. Aug. 27, 2002) (granting summary judgment on negligent maintenance claim, finding that "Plaintiff does not proffer evidence of a specific defect, much less that a reasonable inspection would have revealed such a defect."); *Nahar v. Socci*, 112 A.D.3d 592, 976 N.Y.S.2d 200, 202 (2d Dep't 2013) (overturning jury verdict for plaintiff where his expert's opinion regarding the defendant's negligent maintenance or repair was "speculative and unsupported by the record," and where "the plaintiff proffered no evidence that negligent repair, as opposed to the passage of time, weather, or other

factors, caused the alleged defective condition of the sidewalk").

Here, there is no expert opinion that states that the results of Penske's alleged failure to maintain its Freightliner truck, the single out-of-adjustment brake, was a cause of the accident. According to Justin P. Schorr, Ph.D., the defective brake increased the amount of kinetic energy at the point of impact by twenty percent (20%). He concludes that the physical evidence reveals that the Freightliner was traveling at 44 mph at the point of impact, and that Mr. Brooks "did not slow his vehicle in any substantive way prior to impact." However, Dr. Schorr offers no opinion that the collision would not have occurred had the brake stroke been within the required limit. He offers no opinion that it affected the Freightliner's stopping power.

Similarly, none of Plaintiffs' medical experts offer any analysis of how the alleged twenty percent (20%) increase in the amount of kinetic energy at impact affected each Plaintiffs' injuries. None of the experts provide an opinion that the greater energy caused a plaintiffs' injury or increased the severity of an injury.

Accordingly, as Plaintiffs have failed to present any such required expert evidence here, summary judgment should be entered in Penske's favor and against Plaintiffs.

**B.      Penske Is Entitled to Summary Judgment Because Plaintiffs Have Failed to Provide Sufficient Evidence That Penske's Alleged Negligence Was a Proximate Cause of the Accident or Plaintiffs' Injuries**

Penske is entitled to summary judgment because Plaintiffs cannot prove that Penske proximately caused Plaintiffs' injuries as a matter of law. To prove causation, a plaintiff must demonstrate that the defendant's breach of duty was both the proximate cause and actual cause of the plaintiff's injury. *Eckroth v. Pa. Elec., Inc.*, 12 A.3d 422, 427 (Pa. Super. 2010).

An act only qualifies as a proximate cause when it was "a substantial factor in bringing about the plaintiff's harm." *Eckroth*, 12 A.3d at 428. To determine whether an act is a substantial factor in bringing about harm, the court considers: (1) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it; (2) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm; and (3) lapse of time. Restatement (Second) of Torts § 433 (1965).

Because of the record evidence available here, there is no dispute as to causation, and this matter is ripe for summary judgment. "Where relevant facts are not in dispute and the remoteness of the causal connection between the negligence of the original actor and the injury is so clear, the issue becomes one of law." *Nationwide Mut. Fire Ins. Co. v. Modern Gas*, 143 A.3d 412, 415 (Pa.Super. 2016). Although multiple causes may contribute to an injury, "[p]roximate cause does not

29

exist where the causal chain of events resulting in plaintiff's injury is so remote as to appear highly extraordinary that the conduct could have brought about the harm." *Lux v. Gerald E. Ort Trucking, Inc*., 887 A.2d 1281, 1286-97 (Pa. Super. 2005).

In *Lux,* a driver fell asleep at the wheel and caused one crash. *Id.* at 1284. Subsequently, a second driver fell asleep in another vehicle and struck the vehicle of an emergency rescue vehicle on the scene of the first accident. *Id.* The occupants of the rescue vehicle were severely injured and brought a lawsuit against various parties to both the first and second accident, including the driver from the first accident who had fallen asleep and fled the scene. *Id.* The court reasoned:

> "It is beyond question that the mere existence of negligence and the occurrence of injury are insufficient to impose liability upon anyone as there remains to be proved the link of causation. Furthermore, our Supreme Court has stated that ". . . even when it is established that the defendant breached some duty of care owed the plaintiff, it is incumbent on a plaintiff to establish a causal connection between defendant's conduct, and it must be shown to have been the proximate cause of plaintiff's injury."

*Id.* at 1286 (quoting *Taylor v. Jackson*, 643 A.2d 771, 775 (Pa. Super. 1994) (citations omitted).

Judge Beetlestone relied on *Lux* in her July 2023 opinion in *Asbie v. Padilla*, 2024 U.S. Dist. LEXIS 117263, *8 (E.D. Pa. July 2, 2024). There, the plaintiff alleged that another vehicle caused her car to be pushed into the shoulder lane where she struck defendant's vehicle, which was parked on the shoulder without hazard

lights. *Id.* at \*1. This Court granted defendant's motion to dismiss, ultimately finding the "third car's negligence in pushing [plaintiff] into [defendant's] path serves as a superseding cause of the crash." *Id.* at \*9.

Here, under either Plaintiffs' negligent entrustment or negligent maintenance claim, the undisputed facts demonstrate that Penske did not create a force or series of forces that led to the accident and Plaintiffs' injuries. Rather, the actions or inactions of Mayflower and Mr. Brooks were the superseding causes of the crash.

From an entrustment perspective, in order for this accident to have happened, the following other events had to take place: (1) Agna had to hire Mr. Brooks and refer him to Mayflower, unbeknownst to Penske in June/July 2022; (2) Mr. Brooks was hired and retained by Mayflower unbeknownst to Penske; (3) Mayflower transferred Mr. Brooks to a driver position weeks or months later; (4) Mr. Brooks had to withhold from Mayflower that he did not have a valid driver's license let alone a CDL; (5) Agna and Mayflower had to fail to properly and thoroughly investigate Mr. Brooks' driver's license status and history before making him a driver; (6) Mayflower had to provide the Penske truck to Brooks to drive and set his route for him the day of the accident; (7) Mayflower had to fail to provide Mr. Brooks the level of training as opined by Plaintiffs' expert; (8) Mr. Brooks had to travel at an unsafe rate of speed much too fast for road and traffic conditions (a premise with which all experts agree); (9) Mr. Brooks had to be inattentive to

Plaintiffs' vehicle in the left lane; and (10) Mr. Brooks had to fail to timely, or fail entirely to, initiate the brakes of the Penske truck he was driving. Given this attenuation between Penske's leasing its truck to Mayflower and the accident, Penske's entrustment to Mayflower cannot be the proximate cause of the accident as a matter of law.

A similar analysis produces the same result from a maintenance perspective. Starting with the undisputed fact that Penske inspected the brakes and automatic brake adjuster on February 28, 2023 both of which are deemed suitable; the following other events had to take place in order for this accident to have happened: (1) Mayflower had to fail in its contractual duty to perform a pre-trip inspection of the Penske truck, including the inspection of the brakes;[8] (2) Mayflower had to fail in its contractual duty to report any apparent brake issues to Penske and request

---

[8] Penske's expert, Brian McGuire, makes the following important conclusions supporting Mayflower's duties:

- Every motor carrier systematically inspect, repair and maintain or cause to be systematically inspected, repaired, and maintained all motor vehicles. In this case, Mayflower Laundry & Linen (USDOT # 3415767) is the Motor Carrier responsible for safety;
- In this case, the right rear brake chamber was measured at 1.38 inches (1 3/8 inches);
- The driver's failure to be properly tested and trained led to the failure to identify potential safety defects, such as an automatic brake adjuster becoming "out of adjustment". During the course of a Pre-Trip Inspection the driver is required to check for excessive slack in the automatic brake adjusters.
- Had the driver had the skills to identify the issue, Mayflower Laundry would have been aware of any potential defects, who in turn would have notified Penske Leasing. Penske in turn would have had the defect corrected.

*See* McGuire Report attached Exhibit K

Penske address same; (3) Mr. Brooks and other Mayflower drivers had to drive the Penske Freightliner without reporting any braking issues; (4) Mr. Brooks had to inspect and drive the Penske Freightliner the day of the accident without reporting a brake issue to Penske; and (5) finally, one must speculate that the one brake had been out of adjustment at the time of the accident even after being operated without issue from February 28, 2023 to May 23, 2023.[9]

There is no dispute that this accident occurred because, as the Police Report and Plaintiffs' own experts determined, Mayflower's driver, Mr. Brooks, was inattentive and failed to apply the Penske truck's brakes only seconds prior to impact.

The actions and omissions of Mayflower, its driver Brooks, and Agna, independently caused Plaintiffs' injuries. Penske only entered a lease with Mayflower. The factual "but-for" cause of this accident had everything to do with Mayflower and Brooks, and nothing to do with Penske. As such, Plaintiffs cannot prove that Penske proximately caused their injuries, and Penske is entitled to summary judgment based on lack of causation.

---

[9] Plaintiffs' expert, R. Scott King, found only after the accident that one of the brakes was out of adjustment, but he gives no opinion that the brake was out of adjustment after February 28, 2023 and before the accident occurred, and does not rule out other causes such as the Penske truck being towed twice.

**V.    Penske Is Entitled to Summary Judgment on Plaintiffs' Punitive Damages Claim Because Plaintiffs Have Failed To Produce Any Evidence That Penske's Conduct Was Willful, Wanton, or Exhibited a Reckless Disregard For the Rights of Others, As Is Required For These Special Damages**

Plaintiffs' mere allegations of recklessness against Penske and the request for punitive damages are devoid of the factual and evidentiary record support necessary and should be dismissed pursuant to Federal Rule 56. *See* ECF No. 53 ¶¶ 37, 39, 42, 92, 100, 108, and the *ad damnum* clauses of Counts, X, XI, and XII. Plaintiffs have not provided any evidence of willful, wanton, or reckless conduct by Penske that would warrant the imposition of punitive damages. Penske's only involvement in this case was as lessor, and there is no factual basis, nor genuine issue of material fact, supporting the extreme remedy of punitive damages.

Punitive damages may only be awarded in Pennsylvania "for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984). Conduct is only sufficient to warrant punitive damages based on recklessness when a defendant "knows or has reason to know of facts that cause a high degree of risk of physical harm to another, and deliberately proceeds to act in conscious disregard of, or indifference to that risk." *Martin v. Johns-Manville Corp.*, 494 A.2d 1088, 1097 (Pa. 1985), *remanded and later reversed on other grounds*, 528 A.2d 947 (Pa. 1987).

Under Pennsylvania law, conduct can only be considered reckless if it "involve[s] and easily perceptible danger of death or substantial physical harm, and the probability that it will so result must be substantially greater than is required for ordinary negligence." *Hall v. Jackson*, 788 A.2d 390, 403 (Pa. Super. 2001). Punitive damages may not be awarded for conduct that constitutes ordinary negligence or even gross negligence. *Martin*, 494 A.2d at 1098. *See also Valentino v. Phila. Triathlon, LLC*, 2015 Pa. Super. LEXIS 862, at \*7–8 (Pa. Super. 2015) (affirming trial court dismissal of outrageous conduct claim and striking punitive damages where allegations amount to "nothing more than ordinary negligence arising from inadvertence, mistake, or error in judgment"); *Castetter v. Mr. B. Storage*, 699 A.2d 1268, 1271–72 (Pa. Super. 1997).

Punitive damages require conduct that goes beyond negligence or even gross negligence and is viewed as an "extreme remedy." *Martin*, 494 A.2d at 1096-98, n.14 (Pa. 1985) (abrogated on other grounds by *Kirkbride v. Lisbon Contractors, Inc.*, 521 Pa. 97, 555 A.2d 800 (Pa. 1989)); *see SHV Coal, Inc. v. Cont'l Grain Co.*, 587 A.2d 702, 705 (Pa. 1991) ("[Punitive] damages are not justified where the defendant's mental state rises to no more than gross negligence."). "[A]n appreciation of the risk is a necessary element of the mental state required for the imposition of such damages." *Hutchison v. Luddy*, 870 A.2d 766, 772 (Pa. 2005) (quoting *Martin*, 494 A.2d at 1097 n.12). "Moreover, general rules of causation

35

apply with equal force to punitive damages. Therefore, in determining the sufficiency of evidence for punitive damages, there must be some nexus between [alleged] violations and the cause of the accident. *Villagran v. Freightbull, Inc.*, 698 F. Supp. 3d 807, 810 (E.D. Pa. 2023) (internal quotations and citations omitted).

Plaintiffs' Second Amended Complaint is devoid of factual averments that show an exhibition of an evil motive or reckless indifference to justify a claim for punitive damages as to Penske. Since filing that Second Amended Complaint, Plaintiffs have failed to adduce evidence that would lead a reasonable jury to award punitive damages against Penske. *See* ECF No. 53.

Plaintiffs have not adduced a single fact or piece of evidence that Penske exhibited an evil motive or reckless indifference to justify their claim of recklessness or an imposition of punitive damages. Rather, Plaintiffs' only support is in their own Second Amended Complaint which requests punitive damages against Penske simply because it purportedly owned a trailer involved in a motor vehicle accident. Plaintiffs offer various grounds on which they contend Penske was reckless with respect to entrusting the vehicle to Mr. Brooks, and with respect to maintenance and inspection of the Penske truck. These allegations standing alone fall well short of proving egregious conduct. The allegations do not support negligence let alone the imposition of punitive damages.

36

Like the record in *Villagran*, a case decided in this Court by Judge McHugh roughly one year ago in October 2023, the record in this case does not support a claim for punitive damages under the rigorous standard established by Pennsylvania law. In *Villagran*, the plaintiff alleged various theories of negligence against a defendant trucking company centered, in part, upon negligent entrustment and driver qualifications. *Villagran,* 698 F. Supp. 3d at 810. Judge McHugh held that all such liability theories fell well short of the level required to impose a punitive damages award. *Id.*

Given there is no evidence in the record to support an inference of evil motive or reckless indifference to justify a claim for punitive damages against Penske, all references to the term "recklessness" and claims for punitive damages in Plaintiffs' Second Amended Complaint should be stricken with prejudice and Plaintiffs should be precluded from seeking the recovery of punitive damages against Penske based upon the lack of requisite factual and legal evidentiary support. Even in the event this Court does not dismiss the independent negligence claims against Penske, the Plaintiffs punitive damages claims and allegations of recklessness against Penske should still be dismissed.

**VI.    The Loss of Consortium Claims Against Penske Must Be Dismissed Because They Are Derivative of the Underlying Negligence Claims, Which Fail As A Matter of Law, Thus Precluding Any Recovery For Loss of Consortium**

As Plaintiffs' primary negligence claims fail as a matter of law, the derivative loss of consortium claims must also be dismissed pursuant to Federal Rule 56(a). *See* ECF No. 53 ¶¶ 110-115 of Counts XIII and XIV. A loss of consortium claim cannot survive when the underlying negligence claims do not support liability, as the loss of consortium claim is inexorably tethered to the primary claims.

"Pennsylvania courts have long held that an action for loss of consortium is derivative, and therefore the success of such claims has always been dependent upon the injured spouse's right to recover." *Telang v. NVR, Inc.*, Civil Action No. 19-1025, 2023 U.S. Dist. LEXIS 58084, *32 (W.D. Pa. Mar. 30, 2023) (granting summary judgment on loss of consortium claim where underlying claim did not survive, later affirmed by the Third Circuit).

It is axiomatic that the loss of consortium claim is derivative of an injured party's claim. "In light of our affirmance of the previous issues, appellants cannot succeed on the derivative claim for loss of consortium. *See Scattaregia v. Shin Shen Wu*, 495 A.2d 552, 554 (1985) (holding loss of consortium action is derivative, its success is dependent upon the injured spouse's right to recover); *Kryeski v. Schott Glass Techs.*, 626 A.2d 595 (Pa. Super. 1993). "Under Pennsylvania law, an action for loss of consortium is derivative of the injured party's claim. *Tiernan v. Devoe*,

923 F.2d 1024, 1036 (3d Cir. 1991). *See*, *e.g.*, *Smith v. EAN Holdings, LLC*, No. 19-85, 2019 U.S. Dist. LEXIS 147189, 2019 WL 4118651, at *4 (E.D. Pa. Aug. 29, 2019) (dismissing loss of consortium claim where the substantive claim failed); *Maldonado v. City of Phila. Dep't of Human Servs.*, No. 18-1492, 2020 U.S. Dist. LEXIS 178540, *23 (E.D. Pa. Sep. 29, 2020).

Here, Plaintiffs primary claims, namely those encapsulated in Plaintiffs' Counts X, XI, and XII guised as "Negligence/Recklessness" must fail. Accordingly, it is indisputable that if Plaintiffs' primary negligence claims are dismissed, the loss of consortium claims at Counts XIII and XIV must also be dismissed.

## CONCLUSION

Plaintiffs cannot show a genuine issue of material fact on the critical questions – whether Penske was negligent for entrusting the vehicle to Mayflower and whether Penske negligently maintained the vehicle. Therefore, pursuant to the Graves Amendment and the litany of cases referenced herein, and in accordance with the law, the Court should grant the Motion and enter summary judgment in favor of Penske.

**GERMAN, GALLAGHER & MURTAGH, P.C.**

BY:    /s/ Matthew McColgan, Esquire
    Matthew J. McColgan, Esquire
    PA ID # 319484
    Chantez R. Degraffenreid, Esquire
    PA ID # 332720
    200 S. Broad Street, Suite 500
    Philadelphia, PA  19102
    (215) 545-7700
    mccolganm@ggmfirm.com
    degraffenreidc@ggmfirm.com
    *Attorneys for Defendant,*
    *Penske Truck Leasing Co.*

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

    /s/ Jeffrey L. Pettit, Esquire
    Jeffrey L. Pettit, Esquire
    Ryan J. Murphy, Esquire
    Katie L. Klodowski, Esquire
    1617 JFK Boulevard, Suite 1500
    Philadelphia, PA 19103
    215-557-2900
    *Attorneys for Defendant,*
    *Penske Truck Leasing Co.*

Date:  October 11, 2024