IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLARENCE J. BROWN, JR., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DASHAWN BROOKS, et al. | : | NO. 23-2966 |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                                             October 31, 2024

      Defendants Dashawn Brooks ("Mr. Brooks") and Mayflower Laundry & Linen ("Mayflower") have filed a motion for partial summary judgment to disallow Plaintiffs' (collectively "the Browns") claims for punitive damages in this motor vehicle accident case. Doc. 76-2. For the reasons that follow, the motion is denied.

**I.    FACTUAL BACKGROUND**

      Mr. Brooks began working for Mayflower in June or July of 2022 in the laundry department. Brooks Dep. at 13, 15.[1] Six or seven months later, he began driving for Mayflower. Id. at 19. Plaintiffs were injured in a motor vehicle accident which occurred on May 21, 2023 on I-95 in Philadelphia, when the vehicle in which they were traveling was hit from behind by the Mayflower truck driven by Mr. Brooks. Doc. 53 ¶¶ 19-20, 25. In the Second Amended Complaint, the Browns seek punitive damages from Mr. Brooks based on Mr. Brooks' recklessness in causing the accident and from Mayflower

---

[1] Plaintiffs attached several depositions, including Mr. Brooks', to their response to the summary judgment motion. See Doc. 81-2. For ease, I will refer to depositions using their internal pagination rather than the court's ECF pagination. Other references to filings in this court are to the ECF pagination.

based on vicarious liability, id. Counts I – VI, and from Mayflower directly for reckless hiring, supervision, and retention of Mr. Brooks. Id. Counts VII-IX.[2]

Mr. Brooks and Mayflower seek summary judgment on Plaintiffs' claims for punitive damages arguing that Plaintiffs have failed to demonstrate evidence of outrageousness or recklessness required to support punitive damages. Doc. 76-2. Plaintiffs respond that, based on the facts of the case, a reasonable jury could conclude that Mr. Brooks and Mayflower were sufficiently reckless to warrant an award of punitive damages. Doc. 81-1.

## II.   LEGAL STANDARD

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).[3] A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

---

[2]Plaintiffs also brought negligence and recklessness claims against Penske Truck Leasing Company, Doc. 53 Counts X-XII, which are not relevant to the current motion. AGNA Management, LLC ("AGNA"), was joined as an additional defendant by Mayflower after the filing of the First Amended Complaint, Docs. 33 & 34, and is also not at issue in the current motion.

[3]Anderson predated the 2010 Amendment to Rule 56. However, the change in wording and location within the rule for the summary judgment standard did not alter the standard or caselaw interpretation of the standard. Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendments.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1)(A), (B).  "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact."  Boykins v. Lucent Techs., Inc., 78 F. Supp.2d 402, 408 (E.D. Pa. 2000).  The evidence presented must be viewed in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255.

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)). Rather, the court must consider the evidence and all reasonable inferences which may be drawn from it, "in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).  If a conflict arises between the evidence presented by the parties, the court must accept as true the evidence of the non-moving party, and "all justifiable inferences are to be drawn in [their] favor."  Anderson, 477 U.S. at 255.

## III.  DISCUSSION

Under Pennsylvania law,[4] punitive damages "may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others."  Villagran v. Freightbull, Inc., 698 F. Supp.3d 807, 810 (E.D. Pa. 2023) (quoting Feld v. Merriam, 485 A.2d 742, 747 (Pa. 1984)).  Plaintiffs "must adduce evidence which goes beyond a showing of negligence, evidence sufficient to establish that the defendant's acts amounted to 'intentional, willful, wanton or reckless conduct.'" Galovich, 2024 WL 2962843, at *7 (quoting Phillips v. Cricket Lighters, 883 A.2d 439, 446 (Pa. 2005)).  "To show reckless indifference sufficient for punitive damages, 'a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk.'"  Urur v. Zebra Trucking Corp., Civ. No. 23-670, 2024 WL 758533, at *3 (M.D. Pa. Feb. 23, 2024) (quoting Hutchison v. Luddy, 870 A.2d 766, 772 (Pa. 2005)). In Hutchison, the Pennsylvania Supreme Court reiterated that "[t]he state of mind of the actor is vital" to an award of punitive damages.  870 A.2d at 770 (quoting Martin v. Johns-Mansville Corp., 494 A.2d 1088, 1097 n.12 (Pa. 1985) (in turn quoting Feld, 485 A.2d at 748)).  "[G]eneral rules of causation apply with equal force to punitive damages.

---

[4]Because this action is before the Court based on diversity jurisdiction, state law governs the legal standard for punitive damages, see Galovich v. Morrissette, Civ. No. 21-1532, 2024 WL 2962843, at *6 (M.D. Pa. June 12, 2024 (citing Wright v. Ryobi Tech., Inc., 175 F. Supp.3d 439, 455 (E.D. Pa. 2016)), and the parties agree that Pennsylvania law governs.  Doc. 76-2 at 5; Doc. 81-1 at 17.

Therefore, in determining the sufficiency of the evidence for punitive damages, 'there must be some nexus between [alleged] violations and the cause of the accident.'" Villagran, 698 F. Supp.3d at 810 (quoting Achey v. Crete Carrier Corp., Civ. No. 07-3592, 2009 WL 9083282, at *7-8 (E.D. Pa. Mar. 30, 2009)) (alteration in Villagran).

In deciding a motion to amend a complaint to add punitive damages in a motor vehicle negligence case, the Honorable Mitchell S. Goldberg reviewed the landscape of punitive damages in such cases.

> Repeatedly, courts have permitted claims for punitive damages to proceed in automobile negligence cases where the plaintiff has alleged that either the driver or the driver's employer displayed reckless indifference.  See, e.g., Darden-Munsell v. Dutch Maid Logistics, No. 10-013, 2011 WL 3325863, at *3 (W.D. Pa. July 13, 2011) (declining to dismiss claim for punitive damages where complaint alleged that truck driver operated an overloaded tractor trailer while fatigued, intoxicated, on the phone, and in dangerous weather conditions, and that employer improperly trained driver and allowed him to drive in excess of the applicable hours of service); Burke v. TransAm Trucking, Inc., 605 F. Supp. 2d 647, 656 (M.D. Pa. 2009) (M.D. Pa. 2009) (allegation that driver operated vehicle in violation of Federal Motor Carrier Safety ["FMCS"] Regulations could substantiate a claim for punitive damages; declining to grant summary judgment because evidence was conflicting); Sabo v. Suarez, No. 08-1889, 2009 WL 2365969, at *2 (M.D. Pa. July 31, 2009) (permitting discovery with respect to the plaintiff's claim for punitive damages when there was evidence the defendant truck driver drove through a red light when "the weather was wet and foggy and visibility was poor"); Esteras v. TRW Inc., No. 03-1906, 2006 WL 2474049, at *5 (M.D. Pa. Aug. 25, 2006) (finding, on summary judgment review, that genuine issue of material fact existed with respect to whether the defendant truck company and defendant truck driver and his employer acted with reckless indifference to the safety of the general public by failing to ensure the safety of their vehicles in violation of [FMCS] Regulations, which

5

>allegedly caused the accident at issue); Logue v. Logano
>Trucking Co., 921 F. Supp. 1425, 1427 (E.D. Pa. 1996)
>(denying a motion to dismiss a claim for punitive damages
>where the plaintiff alleged the defendant truck driver
>"operated an overloaded tractor trailer truck with improperly
>adjusted brakes at an excessive, unreasonable and imprudent
>rate of speed so that the truck could not stop for a red light").

Gonzalez v. Seashore Fruit & Produce, Civ. No. 19-1422, 2020 WL 2571101, at *2 (E.D. Pa. May 21, 2020). In Gonzalez, it was alleged that the driver of a box truck was knowingly driving in violation of the FMCS Regulations' hours of service limitations and had previously done so on multiple occasions. Id. at *2. Judge Goldberg concluded that these allegations were sufficient to state a claim for punitive damages. Id. at *4.

Here, to support the claim for punitive damages against Mr. Brooks and vicariously against Mayflower, Plaintiffs rely on Mr. Brooks' violation of state and federal regulations including the fact that Mr. Brooks did not have a valid driver's license,[5] was unqualified to drive a commercial vehicle pursuant to FMCS Regulations, had not conducted a proper pre-trip inspection, and knowingly traveled at an unsafe speed in an unsafe truck. Doc. 81-1 at 17-26. Separately, Plaintiff relies on Mayflower's reckless disregard of danger to the general public based on its failure to properly vet, train

---

[5]In his deposition, Mr. Brooks testified that he did not have a commercial driver's license ("CDL"), but that he did have a valid driver's license at the time of the accident. Brooks Dep. at 19-20, 28, 40. However, he has not produced any evidence of that license, and testified that he gave his "identification card" or "license card" to a police officer following the accident. Id. at 28-29. It is unclear if a CDL is required to drive the subject truck. Sukiasyan 7/23/24 Dep. at 109. Artak Sukiasyan, the General Manager of Mayflower's Delaware location where Mr. Brooks worked, testified at his deposition that he had recently discovered that Mr. Brooks did not have a valid driver's license at the time of the accident. Sukiasyan 6/5/23 Dep. at 9.

and supervise its drivers to support an award for punitive damages directly against Mayflower. Doc. 81-1.

Here, there are conflicts in the evidence at every turn. Mr. Brooks believed he was an employee of Mayflower, Brooks Dep. at 13, 17, 19, whereas Mayflower contends that Mr. Brooks worked instead for AGNA. Kanu Dep. at 16.[6] Plaintiffs contend that Mr. Brooks did not have a valid license at the time of the accident, Doc. 19 at 5-6; Sukiasyan 6/5/24 Dep. at 9, but Mr. Brooks testified that he did. Brooks Dep. at 19-20, 28. The parties disagree about the speed of the truck at the time of the collision, Doc. 81-2 at 47, 48 (Schorr Report opining 44 mph at time of impact); Brooks Dep. at 89 (traveling 28-29 mph), and whether Mr. Brooks maintained a safe speed in light of the traffic conditions. Valentin Dep. at 25-26 (responding officer's opinion). It is undisputed that Mayflower did not maintain a driver qualification file for Mr. Brooks and did not have a copy of his driver's license on file. Kanu Dep. at 44; Sukiasyan 7/23/24 Dep. at 99.

As previously noted, courts have denied summary judgment motions where the evidence allowed a jury to find that defendants acted with reckless indifference by operating a tractor trailer at an excessive rate of speed and violating the FMCS Regulations. Burke, 605 F. Supp.2d at 652-55. Similarly, punitive damages were awarded and affirmed where a truck was overloaded, the load not properly distributed,

---

[6]In responding to the summary judgment motion, Plaintiffs state, "After a year and six months of litigation, Mayflower has finally conceded that they were Defendant Brook's [sic] employer at the time of this crash . . . ." Doc. 81-1 at 26. Plaintiffs have provided no citation for this statement and the deposition testimony and Requests for Admissions attached to Plaintiffs' response indicate otherwise.

7

and the driver exceeded the speed limit and failed to properly brake. Dillow v. Myers, 916 A.2d 698, 702-03 (Pa. Super. 2007).[7]

Here, I conclude that a jury could reasonably find that Mr. Brooks and Mayflower acted with reckless indifference based on the evidence proffered, considered in the light most favorable to Plaintiffs. Mr. Brooks testified that he had never driven a truck prior to driving for Mayflower, and that he was given no road test or training. Brooks Dep. at 9, 24-27; see also Sukiasyan 7/23/24 Dep. at 107-08 (indicating no recollection of training Brooks on pretrip inspection policies or a road test[8]). Mr. Brooks also testified that Mayflower did not ask him whether he any prior experience driving a truck before hiring him, which he thought was unsafe.[9] Brooks Dep. at 19-21. Mr. Brooks and Mr. Sukiasyan both testified that they were not familiar with the FMCS Regulations, id. at 40; Sukiasyan 7/23/24 Dep. at 99, and Mayflower failed to maintain a driver qualification file for Mr. Brooks as required by the governing regulations. Request for Admission 7 (Doc.

---

[7] Although not noted in the Superior Court's opinion, the trial court's opinion in Dillow reveals that the defendant driver was driving with a suspended license. Dillow v. Myers, 78 Pa. D. & C.4th 225, 237 n.9 (Carbon Cty. 2005) (available at 2005 WL 4923687).

[8] Mr. Sukiasyan originally testified that Delaine Sharp, who had since left the company, was the Transportation Manager at the time Mr. Brooks began driving for Mayflower. Sukiasyan 6/5/24 Dep. at 10. However, at a later deposition, Mr. Sukiasyan indicated that he was acting as the transportation manager when Mr. Brooks was hired. Sukiasyan 7/23/24 Dep. at 94, 102.

[9] In Villagran, the court found that the failure of a company's safety officer to have a CDL or driving experience was insufficient to support punitive damages, comparing the role to that of a law professor who does not have experience in the practice of law. 698 F. Supp.3d at 811. Here, however, Mr. Brooks was behind the wheel, not behind a desk.

81-2 at 105). Moseray Kanu, who was the Transportation Manager for Mayflower at the time of the accident and remains in the job today, testified that, based on the information that he knew at the time of his deposition, Mr. Brooks should not have been "on the roadway." Kanu Dep. 45. Based on this evidence, I conclude that a jury could find that both Mr. Brooks and Mayflower had a subjective appreciation of the risk of harm Mr. Brooks posed driving the truck and they ignored that risk.

In addition to vicarious liability, Plaintiffs also seek punitive damages against Mayflower directly for its reckless hiring, supervision, and retention of Mr. Brooks. Doc. 13 Counts VII – IX. Moving Defendants do not separately address the direct claims for punitive damages against Mayflower. However, based on the evidence previously discussed, specifically the deposition of the acting transportation manager at the time Mr. Brooks began driving for Mayflower, I will deny the motion with respect to the claims asserted directly against Mayflower. Although by itself the failure to check driving records of prospective employees may be insufficient to establish "a sufficiently high degree of risk of harm to others as to warrant punitive damages," Dillow, 78 Pa. D. & C.4th at 240 (citing A.T.S. v. Boy Scouts of America, 13 Pa. D. & C.4th 499, 506 (Montgomery Cty. 1992)), the record here is not so limited. The failures of Mayflower's management with respect to Mr. Brooks' driving the truck go far beyond the failure to check his driving record. Without inquiring into and assessing Mr. Brooks' knowledge and experience with driving a truck, it provided no training, instructions or testing of his ability to do so.

Plaintiffs filed a Motion to Compel Supplemental Asset Discovery (Doc. 73), to which Defendants Brooks and Mayflower responded that such discovery was proper only when the court found that punitive damages "may be imposed upon Defendant Mayflower Laundry & Linen." Doc. 75-2 at 3. Having denied moving Defendants' motion for summary judgment on punitive damages, I conclude that supplemental asset discovery may proceed.

An appropriate Order follows.