IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLARENCE J. BROWN, JR., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DASHAWN BROOKS, et al. | : | NO. 23-2966 |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                                       November 4, 2024

Defendant, Penske Truck Leasing Company ("Penske") has filed a motion for summary judgment on the claims of three members of the Brown family (collectively "the Browns" or "Plaintiffs") for negligence/recklessness and loss of consortium. Doc. 79-2. For the reasons that follow, the motion is granted.

I.     **FACTUAL BACKGROUND**

Pursuant to the May 21, 2018 Vehicle Lease Service Agreement ("VLSA") between Penske and Mayflower Textile Services,[1] Mayflower leased the truck involved in this accident ("the Mayflower truck") from Penske. Sukiasyan Dep. at 60;[2] see also VLSA (Doc. 79-8). The Browns were injured in a motor vehicle accident which occurred

---

[1] No one disputes that Mayflower Textile Services, whose name appears on the VLSA, is Mayflower Laundry & Linen, a defendant in this case. See Sukiasyan Dep. at 60.

[2] Penske attached several depositions and the VLSA to its summary judgment motion and Plaintiffs attached additional deposition transcripts and reports to their response. With respect to the depositions, I will refer to the deposition page rather than to the court's ECF pagination. With respect to the VLSA, expert reports, and any other documents filed with the court, I will refer to the court's ECF pagination.

on May 21, 2023 on I-95 in Philadelphia, when the vehicle in which they were traveling was hit from behind by the Mayflower truck driven by Defendant Dashawn Brooks ("Mr. Brooks"). Doc. 53 ¶¶ 19-20, 25. In the Second Amended Complaint, the Browns seek damages from Penske for negligence, carelessness, and recklessness based on Penske's entrustment of the Mayflower truck to a careless, inexperienced, unqualified driver, and for failing to inspect, maintain, and remedy mechanical issues with the Mayflower truck. Doc. 53 Counts X-XII.

In seeking summary judgment, Penske argues that Plaintiffs' claims are barred by the Graves Amendment and that Plaintiffs failed to present sufficient evidence to establish that (1) Penske knew or should have known that Mr. Brooks was incompetent to operate the vehicle, (2) Penske breached its duty to maintain the truck without any report of a problem, and (3) the allegedly defective brake was a factual cause of the accident. Doc. 79-2 at 21-45; Doc. 87-1 at 6-19.[3] Plaintiffs respond that the Graves Amendment does not protect Penske when Plaintiffs assert a direct negligence theory of liability and genuine issues of material fact preclude summary judgment on the issues of a breach of duty and causation. Doc. 84-1 at 14-29. Plaintiffs also argue that a reasonable jury could

---

[3]Penske also argues that Plaintiffs have failed to establish that Penske's actions rose to the level of reckless disregard sufficient to support a claim for punitive damages; Doc. 79-2 at 41-44; Doc. 87-1 at 19, and Plaintiffs concede that the record does not support a claim for punitive damages against Penske. Doc. 84-1 at 32. With respect to the loss of consortium claims of two of the Browns, Doc. 53 Counts XIII-XIV, Penske contends and Plaintiffs agree that the loss of consortium claims are derivative and cannot survive if judgment is entered in Penske's favor on the negligence claims. Doc. 79-2 at 45-46; Doc. 87-1 at 19; Doc. 84-1 at 32.

conclude that Penske should have known that a Mayflower driver was operating the truck without a license and without being qualified to do so. Id. at 29-32.

## II. LEGAL STANDARD

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).[4] A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1)(A), (B). "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." Boykins v. Lucent Techs., Inc., 78 F. Supp.2d 402, 408 (E.D. Pa. 2000). The evidence presented must be viewed in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA

---

[4] Anderson predated the 2010 Amendment to Rule 56. However, the change in wording and location within the rule for the summary judgment standard did not alter the standard or caselaw interpretation of the standard. Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendments.

Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2s 1224, 1240 (3d Cir. 1993)). Rather, the court must consider the evidence and all reasonable inferences which may be drawn from it, "in the light most favorable to the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 487 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). If a conflict arises between the evidence presented by the parties, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in [their] favor." Anderson, 477 U.S. at 255.

## III. DISCUSSION

Plaintiffs' claims against Penske include negligent entrustment, failure to inspect and maintain the truck, and loss of consortium. I will deal with each category separately.

### A.     Negligent Entrustment

Plaintiffs maintain that Penske was negligent for entrusting their vehicle to a careless, unfit, and unqualified driver. Doc. 53 ¶ 92(a)-(d). Penske first relies on the Graves Amendment, 42 U.S.C. § 30106, to preclude liability absent a showing of Penske's negligence, Doc. 79-2 at 21-24; Doc. 87-1 at 6-7, and argues that Plaintiffs have failed to present sufficient evidence to establish that Penske knew or should have known that a driver hired by its customer was allegedly incompetent or unfit to drive the vehicle. Doc. 79-2 at 25-27; Doc. 87-1 at 15-18.[5] Plaintiffs respond that the longstanding

---

[5] The Graves Amendment preempts "state law vicarious liability claim[s] against an owner or lessor of a motor vehicle for the torts of its lessee if liability is not premised on the owner/lessors' fault or negligence." Schalalbeo v. Damco Distrib. Svs., Inc., 657

relationship between Penske and Mayflower permitted Penske to intervene in this situation and they did not.  Doc. 84-1 at 29-32.  Because Plaintiff's base their claims on Penske's own allegedly negligent conduct, rather than simply asserting vicarious liability for Mayflower's conduct, Penske's reliance on the Graves Amendment is misplaced, and I will focus on the adequacy of the evidence as to Penske's own conduct.

With respect to negligent entrustment claims, the parties agree that Pennsylvania has adopted section 308 of the Restatement (Second) of Torts, which states in relevant part:

> It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Gordon v. Robbins, Civ. No. 23-2149, 2024 WL 4008756, at *4 (M.D. Pa. Aug.30, 2024) (quoting Restatement (Second) of Torts § 308).  "[T]o prevail on a negligent entrustment claim . . . , a plaintiff must show that the defendant '(1) permitted [a third party], (2) to operate its [automobile], and (3) that [the defendant] knew or should have known that [the third party] intended to or was likely to use the [automobile] in such a way that would harm another.'"  Id. (quoting, inter alia, Schneider Nat'l Carriers, Inc. v. Syed, Civ. No. 17-2383, 2019 WL 183905, at *3 (M.D. Pa. Jan. 14, 2019) (footnote, citations, and internal quotation marks omitted)).

---

F. Supp.3d 687, 692 (E.D. Pa. 2023).  Here, in both the negligent entrustment and failure to maintain claims, Plaintiffs attempt to establish direct liability.

Here, Plaintiffs have failed to establish the third requirement – that Penske knew or should have known that Mayflower would allow an allegedly incompetent driver to operate the Mayflower truck. Plaintiffs rely on the longstanding relationship between Penske and Mayflower to argue that Penske had some control over Mayflower's choice of drivers. Doc. 84-1 at 30. This is nothing more than speculation, as the longstanding nature of the parties' relationship says nothing about what notice Penske had or should have had about Mayflower's drivers. Plaintiffs also rely on Penske's corporate designee who, when asked what Penske would do if Mayflower allowed employees who were not safe, qualified, and properly licensed to operate Penske vehicles, testified that if a situation arose evidencing gross and continual negligence, "then I'm sure someone from our risk management department or somebody would get involved." Doc. 84-1 at 30 (citing Kerr Dep. at 33). However, when read in context, Mr. Kerr indicated that he had no knowledge of any federal regulation or process in the company to handle such a situation. Kerr Dep. at 32-33. Plaintiffs also argue that Penske's collection of data regarding the vehicles they lease to Mayflower establishes that Penske continues to exercise control over their trucks. Doc. 84-1 at 30. This however does not establish that Penske had any control over Mayflower's choice of drivers.

Penske relies on <u>Roebuck v. Gateway Freight, LLC</u>, in which a truck owned by Penske, leased by Gateway, and driven by Gateway's employee, crossed a median and struck oncoming vehicles. Civ. No. 97-5285, 1999 WL 124462, at *2 (E.D. Pa. Feb. 8, 1999) (cited in Doc. 79-2 at 26 and Doc. 87-1 at 16-17 & n.6). The court granted Penske's summary judgment motion because there were no grounds on which to find

6

Penske knew or should have known the driver had "careless driving propensities." Id. at *7.  Plaintiff complains that the Roebuck case is outdated.  Doc. 84-1 at 31 (noting the case "took place before the millennia").  However, Roebuck remains good law and was relied upon by the Gordon court earlier this year in noting that "Pennsylvania courts have not found an authoritative duty to investigate driver records owed by a lessor, unless the lessor affirmatively assumes responsibility from the lessee.  Barring assumption, any duty to investigate the background of hired drivers remains with the lessee."  Gordon, 2024 WL 4008756, at *5 (quoting Knecht v. Balanescu, Civ. No. 16-549, 2017 WL 4573796, at *11 (M.D. Pa. Oct. 13, 2017) and citing Roebuck, 1999 WL 124462, at *7 (granting summary judgment in favor of the lessor, where the employee of the lessee was involved in an accident resulting in the death of a third party, and reasoning that the lessor had no responsibility regarding the credentials of the lessee's drivers per the terms of the parties' lease agreement)).[6]  Therefore, I will grant Penske's summary judgment motion with respect to the negligent entrustment claim.[7]

---

[6] The VLSA contains nearly identical language to that in the lease agreement in Roebuck.  "Vehicles shall be operated by safe, qualified, properly licensed drivers, who shall conclusively be presumed to be Customer's agents, servants or employees only, and subject to Customer's exclusive direction and control."  VLSA ¶ 8 (Doc. 79-8 at 4); see also Roebuck, 1999 WL 124462, at *3.

[7] For purposes of the negligent entrustment claim, I have assumed that Mr. Brooks was an employee of Mayflower.  It is unclear at this point if Plaintiff was hired as a driver by Mayflower or a third party.  In either event, Plaintiffs have failed to establish that Penske had any knowledge of Mr. Brooks or any control over his employment.

B.     **Failure to Maintain**

Plaintiffs allege that Penske failed to properly inspect, maintain, and repair the Mayflower truck.  Doc. 53 ¶ 92(e)-(m).  Plaintiffs argue that a defective right rear brake was a factual cause in bringing about injuries to the Plaintiffs, and one of their experts opines that the "presence of the defective brake would have resulted in an increase of approximately 20% in the amount of kinetic energy at the point of impact."  Doc. 84-1 at 28 (quoting Schorr Report at 4 (Doc. 84-3 at 192)).[8]  Penske seeks summary judgment on this theory of liability because Plaintiffs have failed to establish that Penske had a duty, breached a duty, or that Penske's action or inaction caused the Plaintiffs' injuries.  Doc. 79-2 at 28-40.  Plaintiffs respond that Penske remained responsible for the maintenance of the Mayflower truck and failed in that duty.  Doc. 84-1 at 16-29.

By the terms of the VLSA, Penske was obligated to provide the Mayflower truck with

> (a) all preventive maintenance, replacement parts and repairs to keep the Vehicles in good repair and operating condition;
> (b) oil and lubricants necessary for the efficient operation of the Vehicles; (c) all necessary tires as a result of normal wear and tear and not as a result of any impact, curbing or puncture damage or other accident, incident or Misuse . . . .

---

[8]The experts disagree whether the brake was defective.  Plaintiffs' automotive engineering expert examined the Mayflower truck on August 15, 2023, and found that the right rear brake chamber exhibited a three-inch stroke, exceeding accepted limits.  King Report (Doc. 79-13 at 3-4).  Penske's expert inspected the truck on July 17, 2024, and found that the brake stroke was 1 5/8 inch, within acceptable limits.  Struble Report at 39 (Doc. 84-3 at 175).  Nevertheless, a dispute as to whether the brake was defective or whether such defect caused the accident does not save Plaintiffs' claim, in the absence of any evidence that Penske had and breached its duty to maintain the truck.

VLSA ¶ 2 (Doc. 79-8 at 3).[9] Penske contends that it performed the required inspection of and maintenance on the Mayflower truck on February 28, 2023, at which time Penske's brake inspector measured the brake strokes to be within the Department of Transportation guidelines. Doc. 79-2 at 17 (citing Benedetto Dep. at 8-12, 29). According to Penske's corporate representative, Penske had a policy to conduct inspections of the Mayflower truck every four months or 22,500 miles, whichever comes first. Benedetto Dep. at 6. Penske argues that because there is no evidence that it was on notice of a defect in the brakes after its inspection and prior to the accident on May 21, 2023, it had no duty to schedule maintenance on the truck. Doc. 79-2 at 30.[10]

Both Plaintiffs and Penske rely on Holder v. Suarez, wherein the lessor of a vehicle had a duty to perform inspections, maintenance, and repairs on the vehicle. Civ. No. 14-1789, 2016 WL 593620, at *1-2 (M.D. Pa. Feb. 12, 2016).[11] The vehicle was involved in an accident, and evidence suggested that prior to the accident the vehicle had

---

[9]The VLSA requires the customer to have its drivers "promptly report any trouble concerning a Vehicle on forms provided by Penske . . . ." VLSA ¶ 3 (Doc. 79-8 at 3).

[10]Plaintiffs' expert, R. Scott King, found that the cause of the brake defect was an inoperable automatic brake adjuster. King Report at 3 (Doc. 79-13 at 4). Penske's expert, Brian McGuire, noted that "[t]he driver's failure to be properly tested and trained led to the failure to identify potential safety defects, such as an automatic brake adjuster becoming 'out of adjustment.' During the course of a Pre-Trip Inspection the driver is required to check for excessive slack in the automatic brake adjusters." McGuire Report at 4 (Doc. 79-14 at 5). There is no evidence that such condition existed at the time of the February inspection or that Mayflower ever reported a problem with the brake adjuster to Penske.

[11]In Holder, the defendant driver was driving a tractor trailer, and the accident was allegedly caused by defects in the trailer leased by moving defendant Trac. 2016 WL 593620, at *1.

9

a flat tire and its brake lights and flashers were not working properly. Id. at *2-3, 6. The court observed:

> Under Pennsylvania law, "[l]essors and owners of motor vehicles may be liable for personal injuries suffered by third parties because of defects in the vehicles." But, "their duty is limited to defects known or discoverable by reasonable inspection."

Holder, 2016 WL 593620, at *16 (quoting Evans v. Goldfine Truck Rental Serv. Co., 361 A.2d 643, 649 (Pa. Super. 1976) (in turn citing Delair v. McAdoo, 188 A. 181 (Pa. 1936); Trusty v. Pattterson, 149 A. 717 (Pa. 1930)). The court noted that when the vehicle left the lessor's control, there was no evidence of any defect. Id. Therefore, the plaintiff's reliance on the lessor's duty to maintain the vehicle was flawed because such a duty is triggered by notice of a defect. Id. And as there was no evidence that the lessor breached its duty, the court granted summary judgment to the lessor. Id. at *17.

Penske argues that it is in the same position as the lessor in Holder. Doc. 79-2 at 30-31; Doc. 87-1 at 8-10. In contrast, Plaintiffs argue that the brake defect was known or discoverable had Penske made a reasonable inspection. Doc. 84-1 at 18. Specifically, Plaintiffs argue that Penske had a duty to act upon certain "telematic information it continuously and systematically received." Doc. 84-1 at 19. Plaintiffs base this argument on a section of the VLSA which states that "Vehicles may be equipped with certain on-board technology . . . that may have the capability to send information regarding the Vehicle's use and operation, including, without limitation, diagnostic information and location information . . . to Penske without notice to Customer." VLSA ¶ 19(a) (Doc. 79-8 at 6). Plaintiffs also rely on the deposition of Penske's corporate

10

designee, David Kerr, who explained that this collected data was used to help customers control expenses and control fuel costs, for example the technology could determine if a truck was idling or not turned off when deliveries were being made. Kerr Dep at 36-37.

Plaintiffs, however, have offered nothing to establish that the Mayflower truck was equipped with technology to transmit data to Penske "continuously and systematically," Doc. 84-1 at 19; see also Kerr Dep. at 35-36, or that such technology could measure the wear and tear on the brakes.[12] In fact, Mr. Kerr testified that the only way that Penske has to track the mileage of the vehicle is based on the customer's reports, and that "[i]t is the customer's obligation as the lessee of the vehicle, to bring that vehicle to one of our locations and/or to report to us if anything is wrong with the vehicle so that we would have the opportunity to perform the necessary maintenance on the vehicle." Id. at 24-25.[13] Plaintiffs' speculation does not create an issue of fact as to whether Penske was in possession of relevant data from the truck's on-board technology.

Plaintiffs also argue that Penske should have inspected the brakes when repairing a side mirror mount ten days prior to the accident. Doc. 84-1 at 23-25. However, there is no evidence that Penske had received any complaints about the brakes, and as noted,

---

[12]Plaintiffs state that "Penske systematically collected telematics data," relying on deposition testimony. Doc. 84-1 at 4. However, when read in context, Mr. Kerr was referring to the collection of data to help control fuel costs, Kerr Dep. at 45-46, and Mr. Benedetto was referring to the data collected from the vehicle during Penske's inspections of the vehicle. Benedetto Dep. at 8-15.

[13]Mr. Kerr testified that Penske does reach out if the lessee has not scheduled the regular inspection due every four months. Kerr Dep. at 27. As noted, that inspection was not yet due at the time of the accident.

Penske found the brakes to be within the acceptable limits less than three months earlier. Supra at 9. Plaintiffs again rely on Mayflower's relationship with Penske to fill in a gap in the evidence, arguing that it supports "[a] reasonable inference . . . that Penske and Mayflower have a long-standing history of Penske providing various data points to them *outside* of regularly scheduled preventative maintenance appointments." Doc. 84-1 at 20. But there is no evidence to support such an inference. The VLSA states that Mayflower will have its drivers report any trouble with the vehicle. Absent such complaint and Penske having completed the routine inspection and maintenance in February, Plaintiffs have failed to establish that Penske breached any duty to inspect and maintain the vehicle.

## VII.   CONCLUSION

Plaintiffs concede that Penske is entitled to judgment on the claims to the extent they allege recklessness to support punitive damages. Penske is entitled to summary judgment on the negligent entrustment claims. Plaintiffs have failed to proffer evidence that Penske knew or should have known that Mayflower would allow an allegedly unlicensed, inexperienced, unqualified driver to operate the Mayflower truck. Penske is also entitled to summary judgment on the failure to inspect, maintain, and repair claims. Plaintiff has failed to proffer evidence that the alleged damage to the right rear brake was known or reasonably discoverable to Penske. Because the loss of consortium claims against Penske are derivative, Penske is entitled to judgment on those claims as well.

An appropriate Order follows.