IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLARENCE J. BROWN, JR., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DASHAWN BROOKS, et al. | : | NO. 23-2966 |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                                       December 6, 2024

      Defendants seek to preclude any testimony, reference, evidence, or argument that Defendant Dashawn Brooks did not have a driver's license at the time of the accident. Doc. 103-2. Plaintiffs oppose the motion on the ground that Defendants should not be permitted to utilize at trial a copy of Mr. Brooks' driver's license that was produced after the close of discovery. Doc. 107-1. In a related motion, Plaintiffs seek to preclude all documents produced by Defendants that were not produced or disclosed during the discovery period. Doc. 105. Defendants respond that admission of the documents presented after the close of discovery, including Mr. Brooks' license, is harmless based on the deposition testimony that referred to such documents. Doc. 115-2.

**I.  FACTS**

      Plaintiffs allege injuries stemming from an accident on May 21, 2023, on I-95 in Philadelphia, when the vehicle in which they were traveling was hit from behind by a truck leased by Defendant Mayflower Laundry and Linen ("Mayflower) and driven by Mr. Brooks. Doc. 53 ¶¶ 19-20, 25. During discovery neither Defendant produced a copy of Mr. Brooks' driver's license. In response to the request for production of Mr. Brooks'

driver's license, Mayflower provided a copy of Mr. Brooks' Delaware identification card issued June 22, 2022, not his driver's license. Answers to RFP 9 (Doc. 107-3 at 5); Doc. 107-1 at 2-3; Doc. 103-2 at 4 (first image). During his deposition, Mr. Brooks testified that he had a license at the time of the accident. Brooks Dep. at 29.[1] At the time of the deposition, Mr. Brooks testified that he was a licensed driver, but had lost/misplaced his license. Id. at 30. Artak Sukiasyan, who was the acting transportation manager at the time Mr. Brooks was hired and began driving for Mayflower, testified that he had

---

[1] It is unclear from his testimony whether Mr. Brooks presented the officer at the scene of the accident with his driver's license or an identification card.
> Q. The only thing that has been provided to me is an identification card. Did you have a valid driver's license on the date of our accident?
> A. Yes, I gave it to the officer. He was – that is how he was able to get my license number and things of that nature.
> Q. Do you still have your driver's license with you right now?
> A. No, I have my ID, but I know my driver's license number.
> Q. At the scene of our accident, did you physically provide a copy of your driver's license to the officer or did you verbally provide him with the number?
> A. No, I provided him with my identification card.
> Q. And the license number that you gave to the officer, it is a Class D, right?
> A. No, I gave him my license, my license card.
> Q. And the license that you had at the time of the accident was a Class D, is that correct?
> A. Yes, a regular license, yes.

Brooks Dep. at 28-29. The accident report completed at the scene includes Mr. Brooks' driver's license number and its expiration date. Doc. 76-7 at 3. Trooper Tyler Valentin testified that Mr. Brooks "provided [him] with some sort of identification," but he did not remember if it was valid at the time. Valentin Dep. at 23 (Doc. 81-2 at 73). He also explained that when he ran the identification, the information "automatically transfers from our computer to our crash document," id. at 31, explaining how the driver's license number appeared in the report.

recently learned that Mr. Brooks did not have a license at the time of the accident. Sukiasyan First Dep. at 9, Sukiasyan Second Dep. at 93, 100. Mr. Sukiasyan did not remember ever asking Mr. Brooks for his driver's license, and when asked if Mayflower had a copy of Mr. Brooks' driver's license, Mr. Sukiasyan stated, "I am not aware of it." Sukiasyan Second Dep. at 99-100. Moseray Kanu, the transportation manager at Mayflower when the accident occurred and who testified as Mayflower's corporate representative, testified that Mayflower did not know at the time of the deposition whether or not Mr. Brooks was a licensed driver, and that he was unaware of Mayflower having a picture of Mr. Brooks' driver's license. Kanu Dep. at 44.

Discovery closed on October 3, 2024.[2] More than a month later, on November 7 and 13, 2024, Defendants supplemented their discovery responses, the vast majority of which consisted of time sheets, pay stubs, and vehicle mileage records. Docs. 105-1 & 105-2. However, key to the motions under consideration, the later production included a copy of Mr. Brooks' Delaware driver's license issued November 1, 2022, and an email appearing to establish that Mayflower had a copy of that license in November 2022. Doc. 105-1 at 2; Doc. 105-2 at 60.

Defendants provide no excuse or explanation for the late production, simply noting their continuing obligation to supplement their discovery responses. Doc. 103-2 at 5; Doc. 115-2 at 5. Despite the belated production, Defendants contend that "to allow the

---

[2]The discovery deadline was originally July 1, 2024, Doc. 30, and was extended twice at the parties' requests. Doc. 44 (Discovery extended to September 3), Doc. 72 (Discovery extended to October 3, 2024).

3

jury to entertain evidence, argument, testimony and/or reference to the fact that Defendant Brooks was unlicensed on the date of the accident, which is obviously false . . . would be extremely and unfairly prejudicial." Doc. 103-2 at 4.  Plaintiffs contend that they will be prejudiced by admission of the copy of the license because they were "unable to confront Mayflower and Mr. Brooks about this photograph[,] unable to ask any questions about the authenticity of this photograph[, and] unable to question Mayflower witnesses about the inconsistencies with their deposition testimony."  Doc. 107-1 at 4-5.

## II.     DISCUSSION

Although Defendants are correct that they have a continuing obligation to supplement their discovery responses, Fed. R. Civ. P. 26(e), they still must do so within the time confines of the rules and the court's orders.  More pertinent to the issue at hand is Rule 37 concerning the failure to make required disclosures.  The rule provides that if a party "fails to provide information . . . the party is not allowed to use that information . . . at trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c).  Here, as noted, Defendants have offered no explanation for their failure to timely produce the license, so they cannot rely on justification to gain admissibility.  Defendants do argue that that their failure to produce the license prior to the close of discovery is harmless, which Plaintiff strenuously disputes.  Doc. 103-2 at 4; Doc. 107-1 at 4-5.

A list of relevant factors governs the use of late-produced evidence:

> In evaluating whether a violation of the discovery rules warrants the exclusion of evidence, the Third Circuit has instructed the courts to consider five factors:

4

> (1) the prejudice or surprise in fact of the party against whom . . . the excluded evidence would have been offered;
> (2) the ability of that party to cure the prejudice;
> (3) the extent to which allowing such . . . evidence would disrupt the orderly and efficient trial of the case . . . ;
> (4) any bad faith or willfulness in failing to comply with the court's order; and
> (5) the importance of the excluded evidence.

Lombardo v. Jo-Ann Stores, LLC, Civ. No. 18-1255, 2019 WL 9098315, at *1 n.1 (E.D. Pa. Jan. 14, 2019) (citing and quoting Accurso v. Infra-Red Servs., 169 F. Supp.3d 612, 616 (E. D. Pa. 2016) (quoting ZF Maritor, LLC v. Eaton Corp., 696 F.3d 254, 298 (3d Cir. 2012) (internal quotation marks omitted))).

Here, Plaintiffs were aware that Mr. Brooks maintained that he had a valid driver's license at the time of the accident based on his deposition testimony, so the existence of the license is not a surprise.[3] Thus, Plaintiffs could have investigated the validity of the license without having the physical license or a copy thereof. Accordingly, so far as testimony about whether or not Mr. Brooks was a licensed driver is concerned, there is no need to disturb the discovery record as it existed prior to the late production.

The more difficult issue involves the admissibility of the late-produced license itself. As noted, Mayflower's representative and employee testified that they were unaware that Mayflower had a copy of Mr. Brooks' license and could not verify that he had a license when driving for Mayflower. Sukiasyan First Dep. at 9; Sukiasyan Second Dep. at 93, 100; Kanu Dep. at 44. This testimony is relevant to Plaintiffs' negligence

---

[3] Mr. Brooks' driver's license number appears on the incident report completed by Trooper Valentin. Doc. 76-7 at 3.

5

claims against Mayflower and the claim for punitive damages, and if Defendants were permitted to introduce the license, such evidence would significantly undermine these claims. This would likely occur even if Plaintiffs explored the failure to timely produce the license through rigorous cross examination. I therefore conclude that under the circumstances, the appropriate sanction under Rule 37(c) is exclusion of the license and preclusion of any evidence or argument that Mayflower was in possession of the license. In essence, it will be as if the supplemental production was never made, and Defendants must take care to explain this ruling to their witnesses.

But Plaintiffs cannot be permitted to take unfair advantage of this ruling. It is now sufficiently clear that Mr. Brooks did in fact have a Delaware drivers' license in force at the time of the accident that Plaintiffs must not be permitted to argue to the contrary. To do so would open the door to my allowing Defendants to introduce the license. Plaintiffs may inquire of Mayflower's representatives whether they verified that Mr. Brooks had a license at the time he was driving for Mayflower and the Mayflower representatives, as noted, are bound by their deposition responses and may not reference the supplemental production or the circumstances that gave rise to it.

The bulk of the briefing on the late production is devoted to the admissibility of the late-produced driver's license. As for the remainder of the documents in the late production, in preparing the Pretrial Stipulation, Defendants shall specify what, if any, of the documents in the late production they intend to use at trial and Plaintiffs shall articulate what specific harm would result from such introduction.

An appropriate Order follows.